## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

SPENCER ERICKSON,

     Plaintiff,

v.

CITY OF LAKEWOOD, COLORADO;
RYAN O'HAYRE, Lakewood Police Officer, in his individual capacity;
EDWARD BAGGS, Lakewood Police Officer, in his individual capacity;
JUSTIN RICHARDS, Lakewood Police Officer, in his individual capacity;
KENNADEE BLEAK, Lakewood Police Officer, in her individual capacity;
MATTHEW CHRISTENSEN, Lakewood Police Officer, in his individual capacity;
JOHN TERRANA, Lakewood Police Officer, in his individual capacity;

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Spencer Erickson, by and through his attorneys Adam Frank and Melissa Roth of FRANK & SALAHUDDIN LLC, respectfully alleges for his Compliant and Jury Demand as follows:

### INTRODUCTION

1. On September 21, 2018, as Spencer Erickson slept in his own bedroom, the Lakewood Police Department and its officers subjected him to a use of force so excessive it nearly killed him. Despite the fact that Mr. Erickson was asleep in his own home and posed no threat of danger to anyone, Defendants Ryan O'Hayre, Edward Baggs, Justin Richards, Kennadee Bleak, Matthew Christensen, and John Terrana used a Lakewood Police K-9 named Finn to apprehend Mr. Erickson for low-level non-violent warrants. The dog attacked Mr. Erickson in his home while he slept, biting his neck and extremities multiple times, causing multiple severe and potentially lethal lacerations.

1

2. The Individual Defendants sent K-9 Finn into Mr. Erickson's bedroom with orders to attack without making any attempt to enter the room themselves, ascertain Mr. Erickson's status, or verify whether Mr. Erickson or any other people or animals were there. They then wrote falsified reports in an apparent attempt to justify their unconstitutional assault of Mr. Erickson by falsely portraying him as an aggressor and initiated the filing of false charges against him.

3. Making matters worse, Defendant City of Lakewood knew that K-9 Finn was a dangerous dog prior to September 21, 2018. It knew because K-9 Finn had previously attacked an officer during training, causing the officer to miss a month of work while he recovered. In spite of this knowledge, Lakewood continued to use K-9 Finn in arrests. K-9 Finn's near murder of Mr. Erickson or an incident like it was the inevitable consequence of Lakewood's unforgivable choice to continue using a dog they knew was violent and dangerous.

## JURISDICTION AND VENUE

4. This is a civil rights action for monetary damages, declaratory relief, injunctive relief, and relief in the nature of mandamus, brought pursuant to 42 U.S.C. § 1983.

5. This Court possesses subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-02. Mr. Erickson seeks relief in the nature of mandamus, 28 U.S.C. § 1361. Plaintiff seeks attorney fees and costs under 42 U.S.C. § 1988.

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All the events alleged herein occurred in the State of Colorado, and all the parties were residents of and/or domiciled in the State at the time of the events giving rise to this Complaint.

## PARTIES

7. Spencer Erickson was 25 years old on September 21, 2018. He is a resident of Colorado and was a resident of Colorado at all times relevant to this Complaint.



8. Defendant City of Lakewood, Colorado ("Lakewood") is a Colorado municipal corporation.

9. At all times relevant to this Complaint and Jury Demand, Defendant Ryan O'Hayre was a resident of the State of Colorado. At all relevant times, Defendant O'Hayre was acting within the scope of his official duties and employment and under color of state law in his capacity as a police officer for the Lakewood Police Department.

10. At all times relevant to this Complaint and Jury Demand, Defendant Edward Baggs was a resident of the State of Colorado. At all relevant times, Defendant Baggs was acting within the scope of his official duties and employment and under color of state law in his capacity as a police officer for the Lakewood Police Department.

11. At all times relevant to this Complaint and Jury Demand, Defendant Justin Richards was a resident of the State of Colorado. At all relevant times, Defendant Richards was acting within the

scope of his official duties and employment and under color of state law in his capacity as a police officer for the Lakewood Police Department.

12. At all times relevant to this Complaint and Jury Demand, Defendant Kennadee Bleak was a resident of the State of Colorado. At all relevant times, Defendant Bleak was acting within the scope of her official duties and employment and under color of state law in her capacity as a police officer for the Lakewood Police Department.

13. At all times relevant to this Complaint and Jury Demand, Defendant Matthew Christensen was a resident of the State of Colorado. At all relevant times, Defendant Christensen was acting within the scope of his official duties and employment and under color of state law in his capacity as a police officer for the Lakewood Police Department.

14. At all times relevant to this Complaint and Jury Demand, Defendant John Terrana was a resident of the State of Colorado. At all relevant times, Defendant Terrana was acting within the scope of his official duties and employment and under color of state law in his capacity as a police officer for the Lakewood Police Department.

15. Throughout this Complaint and Jury Demand, when referring to Defendants O'Hayre, Baggs, Richards, Bleak, Christensen and Terrana in their individual capacities as law enforcement officers for the Lakewood Police Department, the moniker "Individual Defendants" is used.

## FACTUAL ALLEGATIONS

### A. Defendants O'Hayre, Baggs, Richards, Bleak, Christensen, and Terrana, Unlawfully Brutalized and Conspired to Brutalize Spencer Erickson with a Vicious Police K-9

16. At approximately 6:30 p.m. on September 21, 2018, the Lakewood Police Department responded to the home of Spencer Erickson, Justina McGuire, and Drew McGuire at 7309 W. Hampden Avenue, Apartment 5502, Lakewood, Colorado in response to a 911 call from Ms. Drew McGuire.

4

17. Ms. McGuire did not allege any violent behavior or threats on the part of Mr. Erickson when she called 911 or when she spoke to police who responded to the scene. Instead, she told them that Mr. Erickson, who had been her roommate for three months, had created a hole in the attic and was possibly in the crawlspace. Ms. McGuire also reported that she believed there was a warrant out for Mr. Erickson, that he had consumed some vodka and that he may have smoked marijuana at some point in the previous five hours.

18. In short, Ms. McGuire called the police to allege non-domestic violence property damage by a co-owner of the damaged property and possible alcohol and marijuana intoxication by a person inside the person's own home.

19. The Individual Defendants were aware that Mr. Erickson did not have a violent criminal history before they entered his home. They were also aware that he was a 25-year-old man who weighed only 155 pounds.

20. Before they entered the shared home of Mr. Erickson and the McGuire sisters, the Individual Defendants determined that Mr. Erickson had three outstanding arrest warrants: failure to appear for a case involving possession of a controlled substance and DUI in Denver County case 18CR1022, failure to appear for a case involving criminal mischief in Denver County case 18CR3098, and failure to comply for a case involving DUI in Arapahoe County case 17T9389. None of these cases involved any allegation of violence.

21. Mr. Erickson does not have any past convictions or charges for violent offenses.

22. Despite the complete absence of any allegation or history of violent behavior on the part of Mr. Erickson, the Lakewood Police Department responded to Mr. Erickson's home in force.

23. Knowing all of this, the Individual Defendants conferred with each other and came up with a plan for apprehending Mr. Erickson. The plan of action the Individual Defendants discussed, agreed on, and executed is described in the subsequent paragraphs.

24. Defendant Baggs led a team of several police officers, including Defendant O'Hayre and his K-9 Finn, Defendant Richardson, Defendant Bleak, Defendant Christensen, and Defendant Terrana to apprehend a single non-violent, 155-pound suspect.

25. First, Defendant Baggs made minimal attempts to contact Mr. Erickson inside his home.

26. Defendant Baggs attempted one phone call to Mr. Erickson at a number provided by Ms. McGuire.

27. When he did not receive an answer, Defendant Baggs texted Mr. Erickson, identifying himself as a police officer, and ordered Mr. Erickson to "come out with his hands up . . . if he failed to do so a K-9 unit would be deployed within the home." This was the plan the Individual Defendants all agreed to execute.

28. Mr. Erickson did not respond to the call or text message because he was asleep.

29. Following their plan, the Individual Defendants did not search for Mr. Erickson inside his apartment without K-9 Finn.

30. Rather, pursuant to their agreed-upon plan, while some of the Individual Defendants posted themselves at the four corners of the apartment building, the others allegedly made loud commands for Mr. Erickson to exit the apartment.

31. While there was no response from Mr. Erickson, the Individual Defendants also did not see or hear any movement inside the apartment or observe anything indicating an apparent effort by Mr. Erickson to escape his apartment.

32. Despite the fact that there was no allegation of violence or history of violence by Mr. Erickson, no concern for the safety of officers or others, and no apparent effort to escape or resist arrest, the Individual Defendants followed their agreed-upon plan and deployed K-9 Finn into the apartment despite having no visual on Mr. Erickson. On top of this, they did not maintain a visual on the K-9, allowing the dog to run free throughout the apartment.

33. Pursuant to the plan, Defendant O'Hayre let K-9 Finn loose to search the main floor.

34. When the K-9 did not locate Mr. Erickson or anyone else on the main floor, Defendant O'Hayre sent K-9 Finn upstairs to search for Mr. Erickson without any supervision.

35. Continuing to follow their plan, Defendants O'Hayre, Richardson, Christenson, Terrana, and Baggs eventually followed K-9 Finn upstairs.

36. The Individual Defendants deployed K-9 Finn with the specific intent that Mr. Erickson either "come down or the dog would be released, and [Mr. Erickson] would be bit[ten]."

37. K-9 Finn is known by the Lakewood Police Department and each of the Individual Defendants to be a dangerous dog. He should not be used by the Lakewood Police Department at all, let alone released without visual supervision.

38. Prior to September 21, 2018, K-9 Finn bit a Lakewood Police Officer, Patrick Lone, so badly that Officer Lone was out of work for a month.

39. Knowing this, the Individual Defendants nonetheless all agreed to recklessly allow a known dangerous K-9 loose in Mr. Erickson's apartment without supervision.

40. The known dangerous K-9 then viciously attacked and nearly killed Mr. Erickson while he was sleeping in his bedroom. This wholly unnecessary tragedy was a reasonably foreseeable result of the Individual Defendants' decisions and actions; the City of Lakewood's practices, policies, and failure to properly train its officers concerning the use of a K-9; and the City of Lakewood's unconscionable decision to continue to use K-9 Finn even after learning he was dangerous.

41. K-9 Finn entered Mr. Erickson's bedroom ahead of the Individual Defendants and brutally attacked Mr. Erickson.

42. When Defendant O'Hayre entered the room, Mr. Erickson was prone on the floor while K-9 Finn was biting Mr. Erickson on his neck.

43. K-9 Finn's bites caused severe and potentially lethal lacerations to Mr. Erickson's neck.

44. Upon entering the bedroom and seeing this brutal attack, Defendant O'Hayre was not able to immediately release K-9 Finn from Mr. Erickson.

45. While the Individual Defendants downplayed the severity of Mr. Erickson's injuries in their reports and covered his lacerations and bite wounds in photographs taken on scene, photographs taken at the hospital illustrate the severity, lethality, and shocking unreasonableness of the police conduct that created Mr. Erickson's injuries:









46. As these images demonstrate, Mr. Erickson suffered significant lacerations to both sides of his neck.

47. The lacerations were 6-7 centimeters long and 5-7.5 centimeters deep, resulting in exposed and lacerated muscle tissue and an exposed jugular vein.

48. If these wounds had been mere millimeters deeper, Mr. Erickson would be dead.

**B. Mr. Erickson Suffered Severe, Substantial, and Ongoing Injuries, Losses, and Damages as a Direct Result of this Brutal Attack by Lakewood Law Enforcement**

49. Mr. Erickson continues to suffer pain, lasting injuries, and trauma from this attack.

50. Mr. Erickson has been diagnosed with PTSD as a result of the brutal attack, which is having a significant negative impact on his life on a daily basis.

51. Mr. Erickson experiences flashbacks to the attack, difficulty sleeping, nightmares, and a new deep fear of dogs, among other symptoms.

52. The massive scarring on Mr. Erickson's neck makes it appear to anyone he meets that he either tried to kill himself or that someone tried to kill him.

53. This disfigurement has had a significant negative impact on Mr. Erickson's mental health, ability to find employment, potential for career advancement and promotions, and his capacity to form friendships and relationships.

54. The injuries Mr. Erickson suffered to his neck also damaged his vocal cords, distorting his voice and rendering him unable to sing as he could before. This is a profound loss for Mr. Erickson as he studied music in school and intended to pursue career opportunities teaching or performing in the music field. He also derived considerable pleasure and enjoyment from making music, a pursuit that is now lost to him.

55. Mr. Erickson has ongoing physical pain in the areas where he was mauled by the K-9 that flare up whenever he engages in any physical activity that requires use of the injured muscles.

56. This incident has been devastating to Mr. Erickson in all aspects of his life.

57. Adding insult to horrible injury, after finding Mr. Erickson with clearly lethal injuries to his neck, Defendant O'Hayre and Defendant Baggs falsified reports in which they falsely portrayed Mr. Erickson as an aggressor in an apparent attempt to cover up or justify their excessive and unconstitutional assault.

58. Defendants O'Hayre and Baggs falsely claimed they saw Mr. Erickson "fighting and interfering" with the K-9.

59. Defendant Baggs falsely claimed in his report that Defendant O'Hayre was already in Mr. Erickson's bedroom and saw when K-9 Finn first bit Mr. Erickson while he was lying on the floor of his bedroom. However, Defendant O'Hayre admits that he did not observe K-9 Finn apprehend Mr. Erickson because he was following behind the K-9 and had not yet entered the bedroom.

60. Based on the falsified information in the police reports, Defendant Baggs instituted unjustified criminal charges against Mr. Erickson, arresting him on charges that had no basis in law: obstructing a peace officer and failure and refusal to leave premises or property upon request of a peace officer.

61. These unfounded charges were ultimately dismissed.

62. Mr. Erickson ultimately pled guilty to criminal mischief, a class 1 misdemeanor, for the damage to the ceiling. He was placed on probation.

**C. Lakewood's Failure to Adequately Train, Supervise, and Discipline its Employees Regarding the Use, Supervision, and Training of K-9 Units Directly Caused the Brutal and Unjustified Attack of Mr. Erickson**

63. The actual customs, policies, and practices of Defendant Lakewood concerning its police officers' use, deployment of, and supervision of K-9s, the training of K-9 units, and the training of officers who are assigned to and are responsible for the K-9 units was a proximate cause of substantial harm and injury to Mr. Erickson.

64. Despite the fact that Mr. Erickson had no history of violent behavior and posed no risk to the safety of police officers or anyone else, six Lakewood police officers conferred, remembered their training, and based on their training decided it was appropriate to use a K-9 unit to search Mr. Erickson's apartment for him and to apprehend him inside his home.

11

65. None of the Individual Defendants who responded to Mr. Erickson's apartment voiced any concerns or objections to the proposed course of action to send in a K-9 unit to apprehend Mr. Erickson without first having officers attempt to locate or contact him in his home.

66. This was because, despite the fact that what these officers did was shocking and unconstitutional, it was consistent with how they were trained to act by Defendant Lakewood.

67. The Individual Defendants knew that apprehension by a K-9 unit entails commanding a dog to physically injure a human being by biting them, which can cause serious injuries and death.

68. However, they had been trained by Defendant Lakewood that it was permissible to nonetheless deploy K-9s even when the use of force was not justified to effect an arrest.

69. Defendant Lakewood was deliberately indifferent to Mr. Erickson's constitutional rights, because Defendant Lakewood knew that individuals in Mr. Erickson's position (arrestees against whom the use of substantial force was not justified) would be at an enormous risk of suffering dangerous consequences from Lakewood's policies, practices, and failure to properly train and supervise its law enforcement officers regarding the permissible uses and supervision requirements entailed with the release of K-9s.

70. Defendant Lakewood was further deliberately indifferent to Mr. Erickson's constitutional rights because Defendant Lakewood knew that individuals in Mr. Erickson's position (arrestees against whom the use of substantial force was not justified) would be at an enormous risk of suffering dangerous consequences from Lakewood's conscious decision to allow K-9 Finn, a known dangerous dog, to remain on the force and continue to be utilized as a K-9 unit despite having actual knowledge that K-9 Finn had seriously injured people before and was not properly trained.

71. In an additional indication of the dangerous nature of K-9 Finn and the inadequacy of Defendant Lakewood's training practices of K-9 units, K-9 Finn did not initially comply with Defendant O'Hayre's release command and multiple officers had to assist in pulling K-9 Finn off of

12

and away from Mr. Erickson. This was exactly what Lakewood knew to expect from K-9 Finn, based on his prior behavior.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Excessive Force**
**42 U.S.C. § 1983 – Fourth Amendment Violation**
**Defendants O'Hayre, Baggs, Richards, Bleak, Christensen, and Terrana**

72. Mr. Erickson incorporates all other paragraphs of this Complaint as if fully set forth herein.

73. At all relevant times hereto, the Individual Defendants were acting under the color of state law in their capacities as Lakewood law enforcement officers.

74. Mr. Erickson had a protected Fourth Amendment right to not be subjected to excessive force by law enforcement.

75. Defendants O'Hayre, Baggs, Richards, Bleak, Christensen, and Terrana subjected Mr. Clark to force which, judged from a perspective of a reasonable officer on the scene, was unreasonable.

76. The Individual Defendants' unjustified decision to dispatch K-9 Finn and their failure to release K-9 Finn from Mr. Erickson immediately constituted an unconstitutional use of excessive force against him.

77. At all times relevant hereto, the only crime Mr. Erickson was suspected of committing was misdemeanor criminal mischief to shared property, and there is no indication that this offense was ongoing when police responded to his apartment.

78. To the contrary, everything the police observed prior to sending an unsupervised K-9 unit to maul and maim Mr. Erickson was consistent with him being asleep.

79. Mr. Erickson posed no threat to any law enforcement officers.

80. Mr. Erickson did not attempt to evade arrest by flight or resist arrest.

81. Mr. Erickson did not have a history of violence, nor had he exhibited or threatened any violence at any time on September 21, 2018.

82. There was no allegation or other evidence to suggest that Mr. Erickson was armed when the officers dispatched the K-9 unit.

83. Mr. Erickson did not pose an immediate threat to the Individual Defendants or anyone else on that date.

84. Additionally, the Individual Defendants had all exits from the building surrounded. Not only had Mr. Erickson not made any verbal indication of an attempt to evade arrest by flight, the Individual Defendants were also visually assured that Mr. Erickson had made no such attempts to evade arrest by flight.

85. Under these circumstances, the Individual Defendants had no justification for subjecting Mr. Erickson to *any* physical force.

86. The Individual Defendants certainly had no justification for sending an unsupervised known dangerous K-9 to find and apprehend Mr. Erickson by biting him, almost ripping out his throat, and causing deep and severe lacerations to his neck and extremities, almost killing him as he slept in his own home.

87. These actions caused Mr. Erickson substantial harm and were a proximate cause of the Individual Defendants' subsequent initiation of false criminal charges against Mr. Erickson.

**SECOND CLAIM FOR RELIEF**
**Excessive Force Conspiracy**
**42 U.S.C. § 1983 – Fourth Amendment Violation**
**Defendants O'Hayre, Baggs, Richards, Bleak, Christensen, and Terrana**

88. Mr. Erickson incorporates all other paragraphs of this Complaint as if fully set forth herein.

89. At all relevant times hereto, the Individual Defendants were acting under the color of state law in their capacities as Lakewood law enforcement officers.

90. Defendants O'Hayre, Baggs, Richards, Bleak, Christensen, and Terrana conspired to subject Mr. Erickson to unconstitutional excessive force as described above. The Individual Defendants got together and agreed to use force against Mr. Erickson that was unjustified under the Fourth Amendment, and each of the Individual Defendants performed acts in furtherance of the conspiracy to use excessive force.

91. After conferring, the Individual Defendants all agreed that some of the Individual Defendants would go inside Mr. Erickson's apartment with K-9 Finn, and others would stay outside Mr. Erickson's apartment to prevent any hypothetical escape by the sleeping Mr. Erickson.

92. They all agreed that they would send K-9 Finn into Mr. Erickson's apartment and allow him to search for Mr. Erickson without supervision, knowing that this would cause Mr. Erickson to suffer serious injury when he was bitten by K-9 Finn. This was the result the Individual Defendants each sought and formed a plan to effectuate.

93. Each Individual Defendant played a knowing and necessary role in executing the Individual Defendant's conspiracy to effect Mr. Erickson's arrest by utilizing unconstitutional excessive force.

### THIRD CLAIM FOR RELIEF
*Monell*
### Defendant Lakewood

94. Mr. Erickson incorporates all other paragraphs of this Complaint as if fully set forth herein.

95. In light of the duties and responsibilities of personnel employed by Defendant Lakewood, the need for specialized training, supervision, and discipline regarding the use, training, and supervision of K-9 units is so obvious, and the inadequacy of appropriate training and/or supervision is so likely to result in a violation of constitutional rights such as those described herein, that Defendant Lakewood is liable for its failure to properly train, supervise, and/or discipline its subordinate employees and agents.

96. Defendant Lakewood's policies, customs, and practices in failing to properly train, supervise, and/or discipline its employees regarding the use, deployment of, and supervision of K-9 units, the training of the K-9 units, and the training of officers who are assigned to and are responsible for the K-9 units were a moving force and proximate cause of the Individual Defendants' violation of Mr. Erickson's constitutional rights.

97. Defendant Lakewood's policy of continuing to utilize K-9 Finn, even after it knew he was dangerous, was so likely to result in a violation of constitutional rights such as those described herein, that Defendant Lakewood is liable for the natural consequence of this policy.

98. Mr. Erickson has been and continues to be damaged by Defendants' use of excessive force against him, because such conduct caused and causes him physical and mental pain, disfigurement, humiliation, fear, anxiety, loss of enjoyment of life, and loss of his sense of security and individual dignity, among other injuries, damages, and losses.

99. The acts or omissions of each Defendant, including the unconstitutional policy, procedure, custom and/or practice described herein, were the legal and proximate cause of Mr. Erickson's injuries, losses, and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Erickson respectfully requests that this Court enter judgment in his favor against Defendants, and award him all relief as allowed by law, including but not limited to the following:

a) Appropriate relief at law and equity;

b) Declaratory relief, injunctive relief, and other appropriate equitable relief;

c) Compensatory and punitive damages on all claims allowed by law in an amount to be determined at trial;

d) Relief in the nature of mandamus;

e) Attorneys' fees and the costs associated with this action on all claims pursuant to 42

U.S.C. §1988 and all applicable law;

f) Pre- and post-judgment interest at the appropriate lawful rate;

g) Any further relief this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Dated: September 13, 2019

*/s Adam Frank*
Adam Frank
Melissa Roth
FRANK & SALAHUDDIN LLC
1741 High Street
Denver, CO 80218
Telephone: (303) 974-1084
Fax: (303) 974-1085
fas@fas-law.com
melissa@fas-law.com
*Attorneys for Plaintiffs*