IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02613-PAB-NYW

SPENCER ERICKSON,

      Plaintiff,

v.

CITY OF LAKEWOOD, COLORADO,
RYAN O'HAYRE, Lakewood Police Officer, in his individual capacity,
EDWARD BAGGS, Lakewood Police Officer, in his individual capacity,
JUSTIN RICHARDS, Lakewood Police Officer, in his individual capacity,
KENNADEE BLEAK, Lakewood Police Officer, in her individual capacity,
MATTHEW CHRISTENSEN, Lakewood Police Officer, in his individual capacity,
JOHN TERRANA, Lakewood Police Officer, in his individual capacity,

      Defendants.

---

## ORDER

---

This matter is before the Court on the Motion for Partial Dismissal of Plaintiff's Second Amended Complaint and Jury Demand From All Defendants [Docket No. 28] filed on December 6, 2019. On January 14, 2020, plaintiff Spencer Erickson filed a response. Docket No. 41. Defendants replied on February 4, 2020. Docket No. 45.

## I. BACKGROUND[1]

On September 21, 2018, the Lakewood Police Department responded to a 911 call originating from a residence on Hampden Avenue in Lakewood, Colorado. Docket

---

[1] These facts are taken from plaintiff's Second Amended Complaint and Jury Demand [Docket No. 23] and are assumed true for purposes of this order. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

No. 23 at 4-5, ¶ 16.  The call was made by Ms. Drew McGuire, who lived at the residence with her roommates, including plaintiff Spencer Erickson.  *Id.* at 4-5, ¶¶ 16-17.  Ms. McGuire reported that plaintiff had created a hole in the attic and was possibly in the attic's crawlspace.  *Id.* at 5, ¶ 17.  She notified the police that plaintiff had recently consumed vodka, may have smoked marijuana, and may have a warrant out for his arrest.  *Id.*  The individual defendants,[2] all police officers with the Lakewood Police Department, confirmed that plaintiff had three outstanding warrants for his arrest for misdemeanor offenses: (1) failure to appear for a case involving possession of a controlled substance and driving under the influence; (2) failure to appear for a case involving criminal mischief, and (3) failure to comply for a case involving driving under the influence.  *Id.*, ¶ 20.  The individual defendants knew that plaintiff had no violent criminal history and that the purpose of the 911 call was not to report violence.  *Id.* at 5-6, ¶¶ 20-23.

After the individual defendants arrived at the residence, they conferred with each other and came up with a plan to apprehend plaintiff.  *Id.* at 6, ¶ 23.  Specifically, defendants Ryan O'Hayre and Justin Richards conferred with one another in the presence of the other defendants and formulated a plan to apprehend plaintiff using a police dog named Finn.  *Id.*, ¶¶ 24-25.  All individual defendants agreed to execute this plan, and each individual defendant carried out a specific role in the execution of this plan.  *Id.*, ¶¶ 26-27.

---

[2] "Individual defendants" refers to Ryan O'Hayre, Edward Baggs, Justin Richards, Kennadee Bleak, Matthew Christensen, and John Terrana.

2

First, defendant Edward Baggs attempted to call plaintiff at a phone number provided by Ms. McGuire.  *Id.*, ¶ 30.  After receiving no answer from plaintiff, defendant Baggs texted plaintiff, identifying himself as a police officer and ordering plaintiff to "come out with his hands up."  *Id.*, ¶ 31.  Defendant Baggs warned plaintiff that, if plaintiff failed to exit the apartment, "a K-9 unit would be deployed within the home."  *Id.*  Plaintiff, who was asleep, did not answer the telephone call and did not respond to the text message.  *Id.* at 7, ¶ 34.  The individual defendants made loud commands for plaintiff to exit the apartment.  *Id.*, ¶ 36.  Plaintiff did not respond.  *Id.*, ¶ 37.  The individual defendants did not hear or observe any noise or movement that would indicate that plaintiff was attempting to escape the apartment.  *Id.*  The individual defendants then deployed Finn into the apartment,[3] *id.*, ¶ 38, and eventually followed him inside.  *Id.* at 7-8, ¶¶ 40-41.

When Finn failed to locate anyone on the first floor, defendant O'Hayre directed the dog to search upstairs.  *Id.* at 7, ¶¶ 39-40.  There, Finn entered plaintiff's room.  *Id.* at 8, ¶ 47.  When defendant O'Hayre entered plaintiff's room, plaintiff was prone on the floor and Finn was biting plaintiff's neck.  *Id.*, ¶ 48.  Defendant O'Hayre did not give Finn a verbal release command.  *Id.*, ¶ 49.  Instead, he attempted to pull Finn off of plaintiff as Finn continued to bite plaintiff's neck.  *Id.* at 9, ¶ 50.  As defendant O'Hayre

---

[3] Finn was known to the Lakewood Police Department and to the individual defendants as a "dangerous dog."  Docket No. 23 at 8, ¶ 43.  Prior to September 21, 2018, Finn bit a Lakewood police officer during a training exercise and caused injuries that required the officer to be out of work for one month.  *Id.*, ¶ 44.  The Lakewood Police Department continued to use Finn after this incident.  *Id.*, ¶ 46.

attempted to pull Finn off of plaintiff, defendants Richards and Christensen each restrained one of plaintiff's hands, which prevented plaintiff from attempting to disengage from Finn.  *Id.*, ¶ 51.  After defendant O'Hayre managed to pull Finn off of plaintiff, Finn's collar slipped off and the dog again began to bite plaintiff's neck.  *Id.*, ¶ 52.

The City of Lakewood later reviewed the incident and concluded that the actions of each individual defendant complied with its policies concerning the use of force.  *Id.* at 14, ¶ 79.  Lakewood did not discipline any of the individual defendants.  *Id.*, ¶ 80.  As a result of Finn's attack, plaintiff suffered lacerations on both sides of his neck.  *Id.* at 11, ¶ 56.  The lacerations were approximately six to seven centimeters long and five to seven and a half centimeters deep, which caused muscle tears and exposed his jugular vein.  *Id.*, ¶ 57.  Plaintiff's injuries resulted in significant scarring and vocal cord damage.  *Id.* at 12, ¶¶ 62, 64.  Due to this incident, plaintiff suffers from ongoing physical pain, post-traumatic stress disorder ("PTSD"), flashbacks, difficulty sleeping, nightmares, and a fear of dogs.  *Id.*, ¶¶ 61, 65.

Plaintiff sued the City of Lakewood and the individual defendants, raising the following claims: (1) a claim under 42 U.S.C. § 1983 of excessive force against defendants O'Hayre, Baggs, Richards, and Christensen; (2) a claim under 42 U.S.C. § 1983 of excessive force conspiracy against defendants O'Hayre, Baggs, Richards, Bleak, Christensen, and Terrana; and (3) a *Monell* claim against defendant City of Lakewood.  *Id.* at 15-18.  On December 6, 2019, defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Docket No. 28.

Defendants seek dismissal of plaintiff's first claim against all defendants except for defendant O'Hayre for lack of sufficient allegations regarding personal participation, and dismissal of plaintiff's second claim against all defendants on the basis that plaintiff fails to allege a meeting of the minds among the alleged conspirators. *Id.* at 1-2. As a result, defendants claim they are entitled to qualified immunity. *Id.* at 2. As to plaintiff's third claim, the City of Lakewood argues that plaintiff has failed to plead adequate factual allegations to establish a basis for municipal liability. *Id.* at 2.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations

5

respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, to survive a motion to dismiss under Rule 12(b)(6)  "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'"  *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).

## III.  ANALYSIS

Defendants move to (1) dismiss plaintiff's first claim against all individual defendants except defendant O'Hayre; (2) dismiss plaintiff's second claim against all individual defendants; and (3) dismiss plaintiff's third claim against the City of Lakewood.  Docket No. 28 at 7, 9, 11.

### A.  Claim One – Excessive Force

Defendants argue that plaintiff's excessive force should be dismissed against all named individual defendants except for defendant O'Hayre on the basis that plaintiff has failed to plead adequate facts alleging that defendants Baggs, Richards, or Christensen personally participated in Finn's attack on plaintiff, as required to

demonstrate excessive force liability.  Docket No. 28 at 7.  Plaintiff responds that each individual defendant was aware of the apprehension plan and played a distinct role in carrying it out.  Docket No. 41 at 4.  Specifically, plaintiff asserts that defendant Baggs personally participated in Finn's apprehension of plaintiff by sending plaintiff a text message warning him that a police dog would be sent into the apartment if plaintiff did not exit the residence.  *Id.* at 9.  In the alternative, plaintiff argues that defendant Baggs may be held liable under § 1983 for failure to intervene in his fellow officers' use of excessive force or under a failure-to-supervise theory.  *Id.* at 8-9.  In addition, plaintiff argues that defendants Richards and Christensen personally participated in the excessive force when they each held down one of plaintiff's hands during Finn's attack, which prevented plaintiff from breaking free from Finn.  *Id.* at 10.

### 1.  *Defendant Baggs*

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005).  "Personal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). The Tenth Circuit has "recognized at least two other ways in which a plaintiff may show a defendant's involvement."  *Id.*  First, "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983."  *Id.*  "In addition, supervisors may be liable for a subordinate's constitutional deprivations under certain circumstances."  *Id.*

Defendants argue that plaintiff's allegations are deficient as to defendant Baggs

because he failed to "identify [defendant Baggs'] specific acts that could constitute a constitutional violation." Docket No. 28 at 7. In particular, they argue that defendant Baggs cannot be liable under a failure-to-intervene theory because there are no allegations that defendant Baggs deployed Finn or controlled Finn so as to have had the opportunity to intervene in Finn's attack. *Id.* However, the case that defendants rely upon, *Savannah v. Collins*, 547 F. App'x 874 (10th Cir. 2013) (unpublished), is distinguishable. In *Savannah*, the Tenth Circuit held that a plaintiff had failed to allege sufficient facts to demonstrate that an officer present at the scene of a police dog attack could be liable under a failure-to-intervene theory. *Id.* at 876. The issue before the court was whether the passive officer could have stopped the dog attack itself: "Although [plaintiff] asserts that [the defendant] should have stopped Zorro, he does not assert that [defendant] could have stopped Zorro. [Defendant] did not deploy Zorro and there is no assertion that he had the ability to control the dog." *Id.* The Tenth Circuit found that, absent specific factual allegations that the defendant officer "could have intervened during the attack" by the police dog, the plaintiff could not succeed on a failure-to-intervene theory. *Id.*

In contrast, plaintiff's excessive force theory here is twofold: he asserts that defendants acted with excessive force when they (1) dispatched Finn without justification and (2) failed to immediately release Finn from plaintiff after Finn bit plaintiff's neck. *See* Docket No. 23 at 16, ¶ 90. Thus, the question before the Court is not just whether defendant Baggs could have intervened to terminate Finn's attack, but whether Baggs could have intervened to stop defendant O'Hayre's release of Finn in

8

the first place.  *See id.*  Plaintiff alleges that, with knowledge that plaintiff had no past charges or convictions for violent offenses, and with knowledge that plaintiff was not alleged to have committed any violent behavior with respect to the 911 call, defendant Baggs conferred with the other defendants to create an apprehension plan and agreed to execute the plan.  *Id.* at 5-6, ¶¶ 17-24.  Defendant Baggs made one phone call to plaintiff in an attempt to reach him; when plaintiff did not answer, Baggs texted plaintiff, identifying himself as a police officer and warning him that, if plaintiff failed to exit the home, a police dog would be released into the home.  *Id.* at 6, ¶¶ 30-31.  After receiving no response, defendants executed their plan and deployed Finn into the apartment.  *Id.* at 7, ¶ 38.

"To establish a constitutional violation under a 'failure to intervene' theory, [a plaintiff] must show: (i) the defendant officer was present at the scene; (ii) the defendant officer witnessed another officer applying force; (iii) the application of force was such that any reasonable officer would recognize that the force being used was excessive under the circumstances; and (iv) the defendant officer had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so."  *Martinez v. City & Cty. of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *5 (D. Colo. Sept. 25, 2013) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)).

The Court finds that plaintiff's complaint contains sufficient allegations to state a claim of excessive force under a failure-to-intervene theory as to defendant Baggs. Plaintiff alleges that defendant Baggs was present at the scene, was present when the

apprehension plan was formulated, and agreed to execute the plan.  *See, e.g.*, Docket No. 23 at 6, ¶¶ 24-26.  Defendant Baggs did not intervene in the use of force, *see Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (jury could decide whether the release of a police dog constitutes excessive force), and instead took affirmative steps to execute the plan, even though defendant Baggs knew that plaintiff had not been arrested for previous acts of violence, knew that the 911 call was not related to any allegations of violence, and knew that Finn was potentially dangerous.  Docket No. 23 at 7, ¶¶ 32, 38.  While plaintiff does not allege the amount of time it took to formulate the apprehension plan, the complaint indicates that, before Finn was released, the individual defendants conferred and created an apprehension plan, defendant Baggs called and sent a text message to plaintiff, and some of the individual defendants posted themselves at the four corners of the apartment building while others made verbal commands into the apartment for plaintiff to exit.  *Id*. at 6-7, ¶¶ 31-36.  Drawing all reasonable inferences in favor of plaintiff, *see Potter Voice Techs. LLC v. Apple, Inc*., No. 12-cv-01096-REB-CBS, 2013 WL 1325040, at *1 (D. Colo. Mar. 29, 2013), the Court finds that the complaint sufficiently alleges that defendant Baggs had sufficient time and multiple opportunities to intervene in the release of Finn.[4]  *See Priester v. City of Riviera Beach, Fla*., 208 F.3d 919, 925 (11th Cir. 2000) ("Two minutes was long enough for a reasonable jury to conclude that Sergeant Cushing had time to intervene and to order Wheeler to restrain the dog.");

---

[4] Moreover, defendants do not argue that defendant Baggs did not have sufficient time to intervene.  *See* Docket No. 28 at 7-8.

10

*Fogarty*, 523 F.3d at 1164 (three to five minutes was enough time for officer to intervene).  Accordingly, the Court finds that plaintiff has sufficiently stated an excessive force claim as to defendant Baggs under a failure-to-intervene theory.

### 2.  *Defendants Christensen and Richards*

Defendants argue that plaintiff's first claim should be dismissed as to defendants Christensen and Richards because plaintiff has failed to adequately allege their personal participation in the alleged excessive force.  Docket No. 28 at 7-9.  They contend that, because it was defendant O'Hayre who physically controlled Finn, gave him commands, and sent him upstairs, "the allegations against the remaining individual Defendants[] are general collective conclusions or prefatory remarks without factual support."  *Id.* at 8.  They argue that plaintiff fails to "independently complain the mere force involved in the securing of Plaintiff's arms by Defendants Richards and Christensen was constitutionally excessive."  *Id.* at 9.

Plaintiff responds that defendants Christensen and Richards directly participated in the unconstitutional use of force when they each restrained one of plaintiff's arms, which prevented plaintiff from trying to disengage from Finn.  Docket No. 41 at 10.   In the alternative, plaintiff argues that, even if defendants Christensen and Richards were not involved in the application of excessive force, they can be held liable for failure to intervene in the excessive force.  *Id.*  Defendants counter that the complaint lacks sufficient allegations that either Christensen or Richards had a realistic opportunity to intervene.  Docket No. 45 at 3.

The Court finds that plaintiff's complaint sufficiently states an excessive force claim against Christensen and Richards under a direct-participation theory.  Plaintiff alleges that, as defendant O'Hayre attempted to pull Finn off of plaintiff, defendants Christensen and Richards each restrained one of plaintiff's hands, "thereby preventing [plaintiff] from trying to disengage the attacking dog and perpetuating and directly participating in the unconstitutional, unjustified, and potentially deadly use of force." Docket No. 23 at 8-9, ¶¶ 49-51.  The Court finds that these allegations sufficiently allege that Christensen and Richards personally participated in Finn's attack on plaintiff by potentially exacerbating the damage caused by Finn, and therefore sufficiently allege that these officers participated in the unlawful use of excessive force.[5]  *See Anglin v. City of Aspen*, 552 F. Supp. 2d 1205, 1222 (D. Colo. 2008) (finding that the defendant had participated in allegedly excessive force of sedation by injection where the defendant had restrained the plaintiff during the injection); *see also Davis v. Fenimore*, 2010 WL 1489988, at *4 (N.D. Ill. Apr. 13, 2010) (in summary judgment context, finding that a reasonable jury could conclude that officer's restraint of a

---

[5] Defendants argue that the "passive restraint" of plaintiff's extremities in the course of an arrest "cannot constitute any use of force or violation of rights."  Docket No. 45 at 4.  In support, defendants cite *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007), for the proposition that "a small amount of force, like grabbing [a suspect] and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment."  *Id.*  The Court is not convinced by defendants' argument. Grabbing a suspect and placing him in a patrol car is substantially dissimilar from holding down a suspect's extremities while a police dog repeatedly bites the suspect's neck, causing severe injuries.

suspect's arms, while another officer beat the suspect, constituted excessive force).[6]

For this reason, defendants' motion to dismiss will be denied to the extent it seeks to

dismiss plaintiff's first claim against defendants Christensen and Richards.[7]

### B.  Plaintiff's Second Claim – Conspiracy to Commit Excessive Force

Plaintiff's second cause of action is conspiracy to commit excessive force filed

against all individual defendants.  Docket No. 23 at 17.  He alleges that "[t]he Individual

Defendants got together and agreed to use force against [plaintiff] that was unjustified

under the Fourth Amendment, and each of the Individual Defendants performed acts in

furtherance of the conspiracy to use excessive force."  *Id.*, ¶ 104.  Specifically, plaintiff

alleges that defendants "agreed that they would send K-9 Finn into [plaintiff's]

apartment and allow him to search for [plaintiff] without supervision, knowing that this

would cause [plaintiff] to suffer serious injury when he was bitten by K-9 Finn."  *Id.* at

17-18, ¶ 106.  He asserts that each of the individual defendants "played a knowing and

necessary role in executing the Individual Defendants' conspiracy to effect [plaintiff's]

arrest by utilizing unconstitutional excessive force."  *Id.* at 18, ¶ 107.  Defendants argue

that this claim should be dismissed because "O'Hayre was the only one who took any

---

[6] With respect to defendants' argument that plaintiff did not "independently complain" that this was constitutionally excessive, the Court disagrees.  Plaintiff alleges that, "[a]s Defendant O'Hayre attempted to pull the vicious dog off of [plaintiff], Defendants Richards and Christensen each restrained one of [plaintiff's] hands, thereby preventing [plaintiff] from trying to disengage the attacking dog and perpetuating and directly participating in the unconstitutional, unjustified, and potentially deadly use of force."  Docket No. 23 at 9, ¶ 51.

[7] Because the Court finds that plaintiff has stated a claim under a direct-participation theory, it does not reach the parties' arguments with respect to a failure to intervene.

act plausibly directed to application of force upon Plaintiff" and the complaint "lacks sufficiently specific factual allegations of the elements of meeting of the minds and actual deprivation." Docket No. 28 at 9.

"To state a section 1983 conspiracy claim, a plaintiff must demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights." *Montoya v. Bd. of Cty. Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007). The plaintiff "must plead and prove not only a conspiracy, but also an actual deprivation of rights." *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). "[T]here is no requirement of an express agreement, nor must the conspirators know all of the details of the conspiracy," but the plaintiff "must do more than make conclusory allegations of a conspiracy." *Jorgensen v. Montgomery*, No. 06-cv-00853-MSK-BNB, 2008 WL 216398, at *2 (D. Colo. Jan. 24, 2008). Like liability for excessive force, liability for conspiracy to commit excessive force "requires personal participation in the unlawful acts." *Beedle*, 422 F.3d at 1072. Defendants argue that plaintiff's allegations are insufficient to set forth that the individual defendants had a meeting of the minds or that defendants actually deprived plaintiff of his constitutional rights. Docket No. 28 at 9.

In his complaint, plaintiff alleges that defendants O'Hayre and Richards "conferred with each other in the presence of Defendants Baggs, Christensen, Terrana, and Bleak" and formulated a plan to apprehend plaintiff, which included sending a K-9 unit into the apartment to search the apartment and apprehend plaintiff using excessive force. Docket No. 23 at 6, ¶¶ 24-25. He claims that all of the individual defendants

14

agreed to execute the apprehension plan and coordinated to assign each defendant a specific role in this plan. *Id.*, ¶¶ 26-27. He also alleges that certain individual defendants took acts in furtherance of the conspiracy: defendant O'Hayre released K-9 Finn into the apartment without supervision, *id*. at 7, ¶¶ 38-39, and defendants Richards and Christensen restrained plaintiff's arms during Finn's attack so as to prevent plaintiff from disengaging from Finn. *Id.* at 9, ¶ 51.

First, the Court finds that plaintiff has sufficiently pled that the individual defendants had a meeting of the minds with respect to the purported conspiracy to commit excessive force. Plaintiff alleges that the individual defendants, having no reason to believe that plaintiff was violent, created a plan to send Finn, who they knew was potentially dangerous, into the apartment to apprehend plaintiff, agreed to execute the plan, and were each assigned a specific role in order to carry out the plan. *Id.* at 5-6, ¶¶ 22-27. In addition, plaintiff alleges that the defendants' specific plan was to "effect [plaintiff's] arrest by utilizing unconstitutional excessive force" and to "send K-9 Finn into [plaintiff's] apartment and allow him to search for [plaintiff] without supervision, knowing that this would cause [plaintiff] to suffer serious injury when he was bitten by K-9 Finn." *Id.* at 17-18, ¶¶ 106-07.

While "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998), plaintiff's allegations are more than conclusory recitations of the elements of the claim. *Compare Garth O. Green Enter., Inc. v. Harward*, 2017 WL 1184024, at *10 (D. Utah Mar. 29, 2017) (finding allegation that defendants "had a meeting of the minds"

insufficient to state a conspiracy claim because the plaintiff failed to allege that the defendants "specifically agreed on an object to be accomplished") (emphasis and quotation omitted).  At this stage of the litigation, plaintiff's allegations are sufficient to allege a meeting of the minds with respect to the purported conspiracy.  *Cf. Nelson v. Rains*, 2006 WL 1580978, at *2 (D. Kan. June 5, 2006) (noting the "the liberal notice pleading standards of the Federal Rules of Civil Procedure" and finding that allegations that defendants all participated in the beating of the plaintiff sufficiently "allege[d] specific facts from which reasonable inferences can be drawn that the four law enforcement officers agreed, at least implicitly, and engaged in concerted action to use unconstitutionally excessive force").

In the alternative, defendants argue that "the Complaint does not state a claim for violation of the right to be free from excessive force against any Agent Defendant except O'Hayre because only O'Hayre fairly can even be inferred to have directed the *application* of force to Plaintiff before K-9 Finn encountered Plaintiff."  Docket No. 28 at 10 (emphasis in original).  The Court disagrees, and finds that plaintiff has sufficiently pled facts demonstrating that defendants O'Hayre, Baggs, Richards, and Christensen personally participated in the deprivation of plaintiff's constitutional rights.  With respect to defendant O'Hayre, defendants concede that he took an act that could be construed as an act of excessive force against plaintiff when he released Finn into the apartment without supervision.  *See* Docket No. 28 at 9-10 ("O'Hayre was the only one who took any act plausibly directed to application of force upon Plaintiff").  In addition, the Court has already determined that defendant Baggs could be liable for excessive force under

16

a failure-to-intervene theory for his inaction with respect to the release of Finn.  *See*

*Hooks v. Martin*, 2010 WL 11561722, at *5 (D. Kan. Apr. 8, 2010) (allegations of

inaction can support a conspiracy claim); *Twombly*, 550 U.S. at 566 (same).  As for

Richards and Christensen, plaintiff alleges that, during Finn's apprehension of plaintiff,

each of these defendants restrained one of plaintiff's hands, which prevented plaintiff

from disengaging from Finn.  Docket No. 23 at 9, ¶ 51.  As set forth above, these

actions could have exacerbated plaintiff's injuries and could constitute the use of

excessive force.  *Davis*, 2010 WL 1489988, at *4.  The Court finds that these actions

could reasonably be inferred as being within the scope of the conspiracy "to effect

[plaintiff's] arrest by utilizing unconstitutional excessive force" because they were

continuing acts of excessive force in the process of arresting plaintiff.  *See* Docket No.

23 at 18, ¶ 107; *see also id.* at 16, ¶ 90 (alleging excessive force in the form of

defendants' "failure to to release K-9 Finn from [plaintiff] immediately").  Thus, the Court

finds that plaintiff has adequately alleged that each of these defendants personally

participated in the alleged deprivation of plaintiff's constitutional rights.

However, the Court finds that plaintiff has not adequately stated a claim of

conspiracy as to defendants Terrana or Bleak.  While the complaint generally alleges

that these defendants agreed to the apprehension plan, it contains no non-conclusory

allegations that these defendants personally participated in the deprivation of plaintiff's

constitutional rights.  The only specific acts that plaintiff alleges Terrana and Bleak took

during the apprehension plan was that these defendants "eventually followed K-9 Finn

upstairs," which plaintiff states was part of the individual defendants' conspiracy plan

*Id.* at 8, ¶ 41.  But plaintiff does not explain how Terrana and Bleak going upstairs at some point after Finn did was an act in furtherance of a conspiracy to use excessive force to effectuate plaintiff's arrest, and plaintiff's complaint contains no allegations of what Terrana or Bleak did after they went upstairs so as to demonstrate that these individuals took some act to further the conspiracy.  *See generally id.*  Thus, plaintiff's assertions are insufficient to allege that either defendant acted in furtherance of a conspiracy to use excessive force.[8]  For these reasons, plaintiff's second claim is dismissed as to defendants Terrana and Bleak, but survives as to defendants O'Hayre, Baggs, Christensen, and Richards.

### C.  Plaintiff's Third Claim – Municipal Liability under *Monell*

Finally, plaintiff brings a claim of municipal liability against defendant City of Lakewood.  Docket No. 23 at 18.  Local governing bodies can be sued directly under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)  (footnote omitted).  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

---

[8] The allegation that "some of the Individual Defendants posted themselves at the four corners of the apartment building, and others allegedly made loud commands for Mr. Erickson to exit the apartment," *see* Docket No. 23 at 7, ¶ 36, does not plausibly allege that either Terrana or Bleak acted in furtherance of the conspiracy; rather, they demonstrate only that these defendants were engaging in typical policing procedure. *See Myers v. Brewer*, 2018 WL 3145401, at *5 (D. Kan. June 27, 2018), *aff'd*, 773 F. App'x 1032 (10th Cir. 2019) ("The allegations above demonstrate only the parallel conduct of law enforcement responding to a call.").

said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible "(1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). The plaintiff must further show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). Thus, in order to state a claim under § 1983 for deliberate indifference based on a policy or practice, plaintiff must allege "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 769.

Defendants argue that plaintiff's *Monell* claim should be dismissed because plaintiff fails to sufficiently allege facts establishing any of the three *Monell* elements. Docket No. 28 at 13-15. First, defendants argue that plaintiff has failed to adequately plead the existence of an official policy or custom. An official policy or custom may take one of the following forms:

19

> (1) a formal regulation or policy statement; (2) an informal custom
> amounting to a widespread practice that, although not authorized by
> written law or express municipal policy, is so permanent and well settled
> as to constitute a custom or usage with the force of law; (3) the decisions
> of employees with final policymaking authority; (4) the ratification by such
> final policymakers of the decisions – and the basis for them – of
> subordinates to whom authority was delegated subject to these
> policymakers' review and approval; or (5) the failure to adequately train or
> supervise employees, so long as that failure results from deliberate
> indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and alteration marks omitted).  Defendants argue that plaintiff does not allege sufficient facts to establish a plausible claim that a City of Lakewood policy "was the moving force behind the alleged deprivation" because plaintiff's allegations are unconnected to supporting facts establishing an official policy or custom.  Docket No. 28 at 13-14. Plaintiff does not dispute defendants' argument that he did not identify a specific policy in his complaint.  *See* Docket No. 41 at 13-14.  Instead, he simply states that the individual defendants' conduct "was what they had been taught by Lakewood, in accordance with Lakewood's indefensible training, policies, and practices concerning when the use of a K-9 unit was permitted."  *Id.* at 14.

The Court agrees with defendants that plaintiff's complaint fails to sufficiently allege an official policy or practice.  Plaintiff's complaint repeatedly states that the individual defendants acted in accordance with an official City of Lakewood policy, *see* Docket No. 23 at 14, ¶ 82; *id.* at 13, ¶ 73, but fails to identify this purported policy and fails to draw a connection between this policy and the individual defendants' actions. While "official policy or custom may be inferred from a complaint's allegations," *Starstead v. City of Superior*, 533 F. Supp. 1365, 1369 (W.D. Wis. 1982) (citing *Powe*

20

*v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981)), courts have done so where a "systematic pattern" suggests a "policy in some form was the motivating force." *Id.* at 1369-70. Here, plaintiff has identified no systemic pattern of behavior that would indicate that the individual defendants were following an official departmental policy. Instead, plaintiff simply draws the conclusion that the defendants were acting in accordance with an official policy. However, "at the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1215 (D.N.M. 2015).

Plaintiff argues, however, that the City of Lakewood's ratification of the individual defendants' conduct – by taking no disciplinary actions against the individual defendants – demonstrates that the defendants' conduct was in line with an official policy or practice. Docket No. 41 at 14-15; *see also* Docket No. 23 at 14, ¶¶ 77-80 (alleging that the City of Lakewood reviewed the incident and did not discipline the individual defendants for their actions).[9] In support, plaintiff relies upon a Ninth Circuit case providing that a "[p]olicy or custom may be inferred if" an official "took no steps to reprimand or discharge" subordinates or "otherwise failed to admit the [subordinates']

_____

[9] Defendants argue that plaintiff's ratification theory is a "nonstarter," relying on cases that stand for the proposition that a failure to discipline cannot cause a plaintiff's injury for purposes of *Monell*. *See* Docket No. 44 at 9 (citing *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) and *Estate of Valverde v. Dodge*, No. 16-cv-01703-MSK-MEH, 2017 WL 1862283 (D. Colo. May 9, 2017)). But plaintiff does not argue that the City of Lakewood's alleged ratification of the individual defendants' conduct caused his injury; rather, he argues that the alleged ratification is evidence of a municipal policy or practice, *see* Docket No. 41 at 14-15, which the Tenth Circuit has stated may, in some circumstances, provide proof of an official policy. *See Bryson*, 627 F.3d at 788.

conduct was in error." *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

The Court finds that plaintiff has failed to sufficiently plead a *Monell* claim based on a ratification theory.  The Tenth Circuit has indicated that, to establish the existence of an official policy based on ratification, the plaintiff must allege that the subordinate's actions – and the bases for them – were ratified by final policymakers.  *Bryson*, 627 F.3d at 788.  Even assuming that plaintiff could demonstrate the existence of an official policy based only on the City of Lakewood's failure to discipline the individual defendants, *see Jack v. Cty. of Stanislaus*, 2017 WL 4123930, at *7 (E.D. Cal. Sept. 15, 2017) ("Ratification is more than acquiescence, and a mere failure to discipline does not amount to ratification."); *C.F.B. v. Hayden*, 2019 WL 1299679, at *13 (D. Kan. Mar. 21, 2019) ("While this 'ratification' theory may be evidence of the existence of an informal policy, it is not alone enough to be considered an "official policy" giving rise to *Monell* liability."), plaintiff has not identified the final policymakers who allegedly ratified the individual defendants' conduct; rather, his allegations of ratification all refer to the City of Lakewood generally.  *See* Docket No. 23 at 14, ¶¶ 77-80 (alleging that "the City of Lakewood" reviewed the incident, that "representatives of the City" conducted the review, and that "the City of Lakewood" concluded that the individual defendants' actions were appropriate and declined to issue discipline).  This is insufficient to demonstrate the existence of an official policy for purposes of *Monell* liability.  *See Rehberg v. City of Pueblo*, 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *7 (D. Colo. Apr. 17, 2012) (finding that plaintiff's allegations that "Pueblo" and its "supervisory officers" approved conduct at issue was insufficient for failure to allege that authorized

22

policymaker ratified conduct); *Tivis v. City of Colorado Springs*, 19-cv-00867-KMT, 2020 WL 1166842, at *5 (D. Colo. Mar. 11, 2020) (dismissing *Monell* claim where plaintiff's complaint failed to identify a final policymaker); *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (affirming dismissal for failure to allege conduct was approved by official policymaker).

Finally, plaintiff argues that the City of Lakewood may be liable under *Monell* under a failure-to-train theory.  Docket No. 41 at 13.  To state a *Monell* claim based on the failure to train or supervise, "a plaintiff must sufficiently allege that the failure 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"  *Rehberg*, 2012 WL 1326575, at *4 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823, (1985) (plurality opinion) ("'[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.").

Plaintiff alleges that the individual defendants acted consistently with how they were trained, Docket No. 23 at 14, ¶ 76, that the individual defendants had been "trained by Defendant Lakewood that it was permissible to . . . deploy K-9s even when the use of force was not justified to effect an arrest," *id.*, ¶ 82, and that the training of the individual defendants "was a proximate cause" of plaintiff's injuries and that the City of Lakewood was deliberately indifferent to plaintiff's constitutional rights.  *Id.* at 13,

¶ 73; *id.* at 15, ¶ 83.  Missing from these allegations, however, are any supporting factual allegations providing a basis for plaintiff's failure-to-train theory; plaintiff does not set forth any facts concerning how the individual defendants were trained, who they were trained by, or why their training was deficient.  *See Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (dismissing municipal liability claim where plaintiff had "generally allege[d]" that the individual defendants were not properly trained but had not "allege[d] specific deficiencies in training and supervision, or explain how the incident described in the Amended Complaint could have been avoided with different or better training and supervision"); *see also Rehberg*, 2012 WL 1326575, at *5 (dismissing *Monell* claim where plaintiff had failed to allege specific facts regarding the officers' training, did not identify individuals that allegedly failed to adequately supervise or train).

Moreover, plaintiff's complaint does not contain any allegations establishing a pattern of similar conduct that would demonstrate a failure to train.  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Connick*, 563 U.S. at 62 (quotation omitted).  "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  *City of Canton*, 489 U.S. at 390-91.  Here, plaintiff's allegations focus solely on this singular incident and rely on an assumption

that the individual defendants' behavior must have been the result of the City of

Lakewood's training program.[10]  These allegations are insufficient to plausibly state a

claim of municipal liability.  *Twombly*, 550 U.S. at 570.  Because the Court finds that

plaintiff has not plausibly stated a *Monell* claim under any of its proffered theories,

plaintiff's third claim against the City of Lakewood will be dismissed.

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that the Motion for Partial Dismissal of Plaintiff's Second Amended

Complaint and Jury Demand From All Defendants [Docket No. 28] is **GRANTED IN**

**PART** and **DENIED IN PART**.  It is further

**ORDERED** that plaintiff's second claim for relief is dismissed with prejudice as to

defendants Terrana and Bleak.  It is further

---

[10] To the extent that plaintiff's complaint can be read as alleging a pattern of behavior with respect to Finn, *see* Docket No 23 at 2, ¶ 3 (alleging that Finn had previously attacked an officer during training and that the City of Lakewood continued to use him in suspect apprehensions), plaintiff has not alleged any facts identifying who trained Finn or identifying a City of Lakewood policy to keep dangerous dogs on the force.  *See Rehberg*, 2012 WL 1326575, at *5.  Moreover, plaintiff has not pled any facts setting forth the details of the prior incident so as to demonstrate that it is similar to Finn's attack on plaintiff.  "The law requires the pattern of constitutional violations to be sufficiently 'similar' to the violation in the case at hand in order to demonstrate that the [municipal defendant's] officials were on notice that their training program was inadequate."  *Barber v. Town of La Veta*, No. 14-cv-03273-RBJ, 2015 WL 5865105, at *4 (D. Colo. Oct. 8, 2015) (citing *Connick*, 563 U.S. at 62)).  Finally, one prior incident is insufficient to establish a failure to train.  *Coffey v. McKinley Cty.*, 504 F. App'x 715, 719 (10th Cir. 2012) (unpublished) ("One prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations.").

**ORDERED** that plaintiff's third claim is dismissed with prejudice.

DATED September 24, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge