IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02613-PAB-NYW

SPENCER ERICKSON,

    Plaintiff,

v.

CITY OF LAKEWOOD, COLORADO,
RYAN O'HAYRE, Lakewood Police Officer, in his individual capacity,
EDWARD BAGGS, Lakewood Police Officer, in his individual capacity,
JUSTIN RICHARDS, Lakewood Police Officer, in his individual capacity,
MATTHEW CHRISTENSEN, Lakewood Police Officer, in his individual capacity,

    Defendants.

---

**ORDER**

---

This matter is before the Court on plaintiff's Motion to Strike Defendants' Retained Expert Doug Roller [Docket No. 80] and Defendants' Rule 702 Motion to Exclude Plaintiff's Expert Witness Scott A. DeFoe [Docket No. 82]. Defendants responded to plaintiff's motion, Docket No. 96, to which plaintiff replied. Docket No. 97. Plaintiff responded to defendants' motion, Docket No. 95, to which defendants replied. Docket No. 99.

**I. BACKGROUND**[1]

On September 21, 2018, the Lakewood Police Department responded to a 911 call originating from a residence on Hampden Avenue in Lakewood, Colorado. Docket

---

[1] The Court assumes the parties' familiarity with the background facts and procedural history of this lawsuit, which are set forth in previous orders. *See, e.g.*, Docket No. 64. The following facts are taken from plaintiff's Third Amended Complaint and Jury Demand [Docket No. 106].

No. 106 at 4, ¶ 14.  The call was made by Drew McGuire, who lived at the residence with her roommates, including plaintiff Spencer Erickson.  *Id.* at 4–5, ¶ 15. Ms. McGuire reported that plaintiff had created a hole in the attic and was possibly in the attic's crawlspace.  *Id.*  She notified the police that plaintiff had recently consumed vodka, may have smoked marijuana, and may have a warrant out for his arrest.  *Id.* The individual defendants, who include Ryan O'Hayre, Edward Baggs, Justin Richards, Matthew Christensen, all police officers with the Lakewood Police Department, confirmed that plaintiff had three outstanding warrants for his arrest for misdemeanor offenses: (1) failure to appear for a case involving possession of a controlled substance and driving under the influence; (2) failure to appear for a case involving criminal mischief, and (3) failure to comply for a case involving driving under the influence.  *Id.* at 5, ¶ 18.  The individual defendants knew that plaintiff had no violent criminal history and that the purpose of the 911 call was not to report violence.  *Id.* at 5, ¶¶ 18–20.

After the individual defendants arrived at the residence, they discussed a plan to apprehend plaintiff.  *Id.*, ¶ 21.  Specifically, defendants O'Hayre and Richards conferred with one another in the presence of the other defendants and formulated a plan to apprehend plaintiff using a police dog named Finn.  *Id.* at 6, ¶¶ 22–23.[2]  All individual defendants agreed to execute this plan, and each individual defendant carried out a specific role in its execution.  *Id.*, ¶¶ 24–25.

Defendant Baggs attempted to call plaintiff at a phone number

_____

[2]  Finn was known to the Lakewood Police Department and to the individual defendants as a "dangerous dog." *Id*. at 8, ¶ 41.  Prior to September 21, 2018, Finn bit a Lakewood police officer during a training exercise and caused injuries that required the officer to be out of work for one month.  *Id.*, ¶ 42.

provided by Ms. McGuire.  *Id.*, ¶ 28.  After not receiving an answer from plaintiff,
defendant Baggs texted plaintiff, identifying himself as a police officer and ordering
plaintiff to "come out with his hands up."  *Id.*, ¶ 29.  Defendant Baggs warned plaintiff
that, if plaintiff failed to exit the apartment, "a K-9 unit would be deployed within the
home."  *Id.*  Plaintiff, who was asleep, did not answer the telephone call and did not
respond to the text message.  *Id.* at 7, ¶ 32.  The individual defendants made loud
commands for plaintiff to exit the apartment.  *Id.*, ¶ 34.  Plaintiff did not respond.  *Id.*,
¶ 35.  The individual defendants did not hear or observe any noise or movement that
would indicate that plaintiff was attempting to escape the apartment.  *Id.*  The individual
defendants then deployed Finn into the apartment and eventually followed him inside.
*Id.* at 7–8, ¶¶ 36–40.

When Finn failed to locate anyone on the first floor, defendant O'Hayre directed
the dog to search upstairs.  *Id.* at 8, ¶ 39.  There, Finn entered plaintiff's room.  *Id.*,
¶¶ 44–45.  When defendant O'Hayre entered plaintiff's room, plaintiff was prone on the
floor and Finn was biting plaintiff's neck.  *Id.*, ¶ 46.  Defendant O'Hayre did not give Finn
a verbal release command.  *Id.*, ¶ 47.  Instead, he attempted to pull Finn off of plaintiff
as Finn continued to bite plaintiff's neck.  *Id.* at 9, ¶ 49.  As defendant O'Hayre
attempted to pull Finn off of plaintiff, defendants Richards and Christensen each
restrained one of plaintiff's hands, which prevented plaintiff from attempting to
disengage from Finn.  *Id.*, ¶ 50.  After defendant O'Hayre managed to pull Finn off of
plaintiff, Finn's collar slipped off and the dog again began to bite plaintiff's neck.  *Id.*,
¶ 51.

The City of Lakewood later reviewed the incident and concluded that the actions

3

of each individual defendant complied with its policies concerning the use of force.  *Id.* at 14–15, 21, ¶¶ 80, 127.  As a result of Finn's attack, plaintiff suffered lacerations on both sides of his neck.  *Id.* at 10–11, ¶¶ 55–56.  The lacerations were approximately six to seven centimeters long and five to seven and a half centimeters deep, which caused muscle tears and exposed his jugular vein.  *Id.* at 11, ¶ 56.  Plaintiff's injuries resulted in significant scarring, vocal cord damage, ongoing physical pain, post-traumatic stress disorder, flashbacks, difficulty sleeping, nightmares, and a fear of dogs.  *Id.*, ¶¶ 58–64.

## II.  LEGAL STANDARD

### A.  Federal Rule of Evidence 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the

case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93).  Where an expert witness relies on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."  *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.  *Basanti v. Metcalf*, 35 F. Supp. 3d 1337, 1342 (D. Colo. 2014), *aff'd sub nom. Basanti v. United States*, 666 F. App'x 730 (10th Cir. 2016) (unpublished).

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable.  *United States v. Crabbe*, 556 F. Supp. 2d

1217, 1220 (D. Colo. 2008).  "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied."  *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact.  *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006).  "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted).  In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'"  *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

6

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## B.  Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26(a)(2) provides, in part:

> (A) In General.  In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:

>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

>> (ii) the facts or data considered by the witness in forming them;

>> (iii) any exhibits that will be used to summarize or support them;

>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

>> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

>> (vi) a statement of the compensation to be paid for the study and testimony in the case.

The advisory committee notes to the 2010 amendments to Rule 26(a)(2)(B)

explain that the obligation for an expert to provide the "facts or data" that the expert considered in forming their opinions "extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert."  The advisory committee notes further state that the term "facts or data" should be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients."

Federal Rule of Civil Procedure 37(c) states, in relevant part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

### C.  Excessive Force

 "To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a seizure occurred and that the seizure was unreasonable."  *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (quotation omitted).  The relevant inquiry is whether the force used by the office was "reasonable under the facts and circumstances presented."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1159 (10th Cir. 2008); *Graham v. Connor*, 490 U.S. 386, 396 (1989) (holding that the standard for excessive force claims under the Fourth Amendment is "objective reasonableness.").

When examining a claim of excessive force, "[a] court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances."  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1287–88 (10th Cir. 2008) (quoting *Marquez v. City of Albuquerque*, 399 F.3d

8

1216, 1220 (10th Cir. 2005)).  In evaluating the reasonableness of the force used during a seizure, courts consider a series of factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  Because police policies and procedures are not necessarily consistent with the Fourth Amendment reasonableness, the Tenth Circuit has held that a violation of department policy is "not relevant to determining if [an officer's actions] violated the reasonableness requirement of the Fourth Amendment." *Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005).

## III.  ANALYSIS

### A.  Plaintiff's Motion to Strike Doug Roller

Defendants endorsed Mr. Roller to testify as a retained expert.  Docket No. 80-1 at 1.  Mr. Roller was Chief Trainer for the Los Angeles Police Department's K-9 Platoon for 17 years until 2013.  *Id.* at 2.  In that position, he oversaw all aspects of canine training, maintenance, and selection for the platoon.  *Id.*  According to defendants' disclosures, Mr. Roller is "nationally recognized expert in K-9 tactics, perimeter containments and search techniques," has been involved in over 6,500 canine deployments, and has been qualified as an expert witness in "K-9 litigation matters."  *Id.*

Plaintiff moves to exclude portions of Mr. Roller's proposed expert testimony for four reasons.  Docket No. 80 at 2.  First, plaintiff argues that, by failing to disclose the sources of his opinions, Mr. Roller has not complied with Federal Rule of Civil Procedure 26(a)(2)(B)(ii).  *Id.*  Second, plaintiff argues that the portions of Mr. Roller's testimony and report are irrelevant.  *Id.*  Third, plaintiff argues that Mr. Roller's second

report, submitted on November 13, 2020, was an improper supplemental report "submitted in the guise of a rebuttal report" and was therefore untimely. *Id.* Fourth, plaintiff argues that portions of Mr. Roller's report are speculative and not grounded in his expertise. *Id.* The Court considers each of these arguments in turn.

### 1. Mr. Roller's Disclosure of Sources

Plaintiff seeks to exclude Mr. Roller's testimony because, plaintiff argues, Mr. Roller failed to disclose the sources that he "reviewed or considered in forming his opinions," which violates Rule 26(a)(2)(B)(ii) and puts plaintiff at a severe disadvantage to effectively cross examine Mr. Roller. *Id.* at 13. Alternatively, plaintiff argues that the Court should order defendants to provide a complete list of all materials Mr. Roller reviewed for each report. *Id.* at 14.

Rule 26(a)(2) provides, in part, that a party's disclosure of an expert must be accompanied by a written report that contains the "facts or data considered by the witness in forming" their opinions. *See* Fed. R. Evid. 26(a)(2)(B)(ii). Courts in this district have noted that "[i]t is sufficient . . . to provide in the expert report a listing of the data and other information considered by the expert, which must be provided or otherwise made available for inspection upon request" but that "[t]he rule does not require that all data or other information considered by the expert must be copied and physically provided with the report." *Dolin v. Contemp. Fin. Sols., Inc.*, No. 08-cv-00675-WYD-BNB, 2009 WL 4730465, at *2 (D. Colo. Dec. 8, 2009) (citing *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1121–22 (D. Colo. 2006)). The advisory committee notes to the 2010 amendments to Rule 26 explain that this requirement "extends to any facts or data 'considered' by the expert in forming the opinions to be

10

expressed, not only those relied upon by the expert" and extends "facts or data" to "broadly . . . require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Federal Rule of Civil Procedure 37(c) states, in part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." This determination "is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quotation omitted).

Defendants argue that Mr. Roller "clearly indicate[d] the materials he reviewed and relied upon in forming his opinions" and cites generally to Mr. Roller's reports. Docket No. 96 at 13. However, neither of Mr. Roller's reports lists the facts or data that he considered. While Mr. Roller's second report cites six depositions, *see* Docket Nos. 80-4 at 9–17; 96-5 at 9–17, it does not list or cite other authorities or sources that Mr. Roller reviewed. The Court thus finds that Mr. Roller's report does not comply with Rule 26(a)(2)(B)(ii).

The Court must next determine whether, under Rule 37, defendants' failure to disclose the facts and data considered by Mr. Roller was substantially justified or harmless. The Tenth Circuit has identified four factors for the Court to consider in determining whether the failure to disclose is substantially justified or harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the non-disclosing party's bad faith or willfulness. *Woodworker's Supply*, 170 F.3d at 993.

11

Plaintiff argues that the lack of disclosure places plaintiff at a "severe disadvantage" because plaintiff's ability to cross-examine Mr. Roller is "severely hampered." Docket No. 80 at 13. Plaintiff also highlights that defendants have made no attempt at "belated" compliance and argues that Mr. Roller's failure to provide the facts and data that he relied upon is not harmless because it puts plaintiff at a disadvantage. *Id.* at 13–14. Defendants argue that they have offered to make Mr. Roller available to be deposed at any time "in the event Plaintiff wants more information regarding Mr. Roller's opinions," but that plaintiff has not accepted this offer. Docket No. 96 at 13. Defendants also state that the "granular detail" contained in Mr. Roller's reports and defendants' offer to make him available means that there is no prejudice to plaintiff, especially where trial is not set until April 2022. *Id.* at 13–14. It is not clear what defendants mean by "granular detail" or why compliance with Rule 26 is excused depending on whether a report is more or less detailed.

Although there is no evidence of bad faith or willfulness on the part of defendants or Mr. Roller to deprive plaintiff of the facts and data that Mr. Roller considered, the Court finds that defendants have failed to comply with their disclosure obligations. Therefore, Mr. Roller shall comply with his obligations under Rule 26(a)(2)(B)(ii) by supplementing his report within three weeks of this order.

### 2. Relevance of Mr. Roller's Opinions

Plaintiff seeks to exclude portions of Mr. Roller's opinions on relevance grounds. Plaintiff makes three main relevance arguments, which the Court considers in turn. First, plaintiff argues that Mr. Roller's opinions that defendants' use of force complied with Lakewood Police Department policy and procedures are irrelevant because police

12

regulations and policies are not the standard by which the constitutionality of an officer's use of force is judged.  Docket No. 80 at 4.

Plaintiff is correct that Rule 702 requires an analysis of the relevance of Mr. Roller's proposed expert testimony.  *See Daubert*, 509 U.S. at 589 ("[U]nder the Rules[,] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."); *Adamscheck v. Am. Fam. Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016) ("[A] district court must decide first, whether the expert testimony is reliable, and second, whether it is relevant.").  As mentioned above, the standard for excessive force claims under the Fourth Amendment is "objective reasonableness," *Graham*, 490 U.S. at 388, and violation of police department policy is "not relevant to determining if [an officer's actions] violated the reasonableness requirement of the Fourth Amendment."  *Tanberg*, 401 F.3d at 1164.

Defendants argue that references to the Lakewood Police Department's policies "is Mr. Roller's method of analyzing the objective factual circumstances as a means of providing context for the reasonableness of Defendants' actions."  Docket No. 96 at 5–6.  Mr. Roller does not state in either report that his methodology is based on reviewing the officers' conduct in light of the Lakewood Police Department's policies.  Defendants attempt to justify Mr. Roller's use of such policies and procedures by relying on *Cavanaugh v. Woods Cross City*, 718 F.3d 1244 (10th Cir. 2013).  Defendants rely on *Cavanaugh* for the proposition that "[a] police practices expert could have testified that under the circumstances faced by [an officer,] a reasonable officer would have concluded that [the suspect] was a threat and used similar force."  Docket No. 96 at 6 (quoting *Cavanaugh*, 718 F.3d at 1250).  But this reliance is misplaced because, as

defendants note, *Cavanaugh* concerned a police practices expert's testimony on the level of force that a *reasonable* officer would have used.  Moreover, *Cavanaugh* did not concern the admissibility of testimony on police department policies, but rather the admissibility of evidence of an officer's subjective fears of the plaintiff.  *See* 718 F.3d at 1249–50.  The Court will therefore exclude as irrelevant the portions of Mr. Roller's reports regarding the defendant officers' compliance with the Lakewood Police Department's policies and procedures.  *See Tanberg*, 401 F.3d 1163–64; *see also Whren v. United States*, 517 U.S. 806, 815 (1996) ("[P]olice enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and from time to time.  We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be turned upon trivialities." (citations omitted)).

Defendants rely on *United States v. Rodella*, 2014 WL 6634391, at *9–11 (D.N.M. Nov. 20, 2014), for the proposition that municipal policies can be used to assess the reasonableness of defendants' actions.  Docket No. 96 at 7.  Defendants' reliance is misplaced.  Although the court in *Rodella* expressed its disagreement with the bright-line rule on the admissibility of police department policies set forth in *Tanberg*, the court acknowledged that *Tanberg* prevented the admission of such testimony. *Rodella*, 2014 WL 6634391, *11 (noting that standard operating procedures and established police practices are relevant to a Fourth Amendment inquiry, but noting that the court does not have "the liberty to allow such testimony in light of Tenth Circuit law" (citation omitted)).

Plaintiff also asks the Court to exclude Mr. Roller's opinion comparing the

14

Lakewood Police Department's K-9 program and departmental resources with the Los Angeles Police Department's.  Docket No. 80 at 6.  Defendants appear to concede this argument as they do not address it in response, and the Court agrees with plaintiff that any comparison of the Lakewood Police Department with the Los Angeles Police Department is irrelevant to a determination of whether the defendant officers acted in an objectively reasonable fashion.[3]

Second, plaintiff argues that Mr. Roller's opinions based on the 911 call must be excluded because the defendant officers did not have access to the call or recording before authorizing the use of force.  *Id.* at 5 (citing Docket No. 80-2 at 1, 5, 7).  Thus, since the objective reasonableness of officers' actions is judged by the facts known to the officers at the time, the 911 call is irrelevant to a jury's determination of the officers' reasonableness.  *Id.* (citing *Graham*, 490 U.S. at 396 (Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.")).  In response, defendants argue that plaintiff's argument is "more akin to a form of impeachment better addressed at trial" and also note that plaintiff's expert, Mr. DeFoe, relies on the same 911 call in forming his opinions.  Docket No. 96 at 7, 7 n.2 (citing Docket No. 82-1 at 10–11, 23–24).  Defendants also argue that defendants obtained "substantially the same information from Ms. McGuire as set forth in the 911

---

[3] The Court does not find testimony on Lakewood Police Department policies to be irrelevant to plaintiff's municipal liability claim.  *See, e.g.*, *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992) ("Especially in the context of a failure to train claim, expert testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of a municipality's training procedures.  To disregard expert testimony in such cases would, we believe, carry with it the danger of effectively insulating a municipality from liability for injuries resulting directly from its indifference to the rights of citizens.").

call." *Id.* at 8.  The Court agrees with plaintiff that discussions of the 911 call are not relevant to the defendants officers' actions, as the parties appear to agree that the officers did not listen to the 911 call before arriving at the scene.  Thus, because the phone call would not be relevant to the inquiry into the reasonableness of the officers' conduct, judged from the perspective of a reasonable officer on the scene, the Court will exclude opinions based on the 911 call.  However, Mr. Roller may testify regarding information gleaned from what Ms. McGuire told the officers at the scene.[4]

Third, plaintiff argues that Mr. Roller's supplemental report "opines as to the propriety of the defendant officers' actions under an undefined standard of disagreement with Mr. DeFoe," and plaintiff insists that Mr. Roller has supplemented his initial opinions with new ones based on a different and unclear legal standard.  Docket No. 80 at 6–7 (comparing Docket No. 80-2 at 8 with Docket No. 80-4 at 5).  In the portion of his first report that plaintiff identifies, Mr. Roller opines that "canines are generally trained to bite extremities of the body" and that, therefore, "it can be surmised that K9 Finn met the suspect who was lying on the floor" in such a position that Finn could not access plaintiff's extremities.  Docket No. 80-2 at 8.  In the portion of his second report that plaintiff identifies, Mr. Roller states that defendant Christensen was ordered to carry less lethal force during the search and that a "properly trained canine" would alert officers of a subject's presence by barking.  Docket No. 80-4 at 5.  Defendants do not address this argument head-on.

---

[4] While it is less clear which of Mr. DeFoe's particular opinions were informed by the 911 call, *see generally* Docket Nos. 80-5 at 10–11, 23–24, this ruling applies equally to Mr. DeFoe's testimony.

Although an expert's "proffer is tested against the standard of reliability, not correctness," *Allstate Sweeping*, 2011 WL 2173997, at *3; *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999), the issue of whether the expert used the proper legal standard in arriving at his conclusions is critical to the determination of whether the expert used a reliable methodology.  *See Mitchell*, 165 F.3d at 781; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222.  In both sections of Mr. Roller's reports that plaintiff identifies, Mr. Roller opines that the defendant officers' conduct was "well within" Lakewood Police Department policy.  *See* Docket No. 80-2 at 8; Docket No. 80-4 at 5. Because defendants' compliance with Lakewood Police Department's policies is not relevant to whether they acted with excessive force under the Fourth Amendment, Mr. Roller's methodology, which is analyzing defendants' conduct against those policies, is unreliable.  The Court will therefore exclude these opinions as to plaintiff's excessive force claims.

### 3.  Timeliness of Mr. Roller's Second Report

Plaintiff next argues that the portions of Mr. Roller's second report based on deposition transcripts that were available before the deadline for disclosing expert witnesses constitute an untimely supplemental report.  Docket No. 80 at 7.  Rule 26(e)(1) requires that an expert supplement a report and disclosures in certain limited circumstances, including when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect.  *See* Fed. R. Civ. P. 26(e); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953–54 (10th Cir. 2002). Permissible supplementation under the Rules instead "means correcting inaccuracies,

17

or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (quotation omitted); *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *9 (D. Colo. Apr. 21, 2016).  However, "[a] supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)."  *Cook*, 580 F. Supp. 2d at 1169.  "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given."  *Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003).

Defendants provided Mr. Roller's first report on October 14, 2020 and his second report on November 13, 2020.  Docket No. 80 at 1–2.  In his second report, Mr. Roller reviewed transcripts from various witnesses' depositions.  Docket No. 80-4 at 9–17. These depositions were taken, according to Mr. Roller's second report, between August 31, 2020 and September 28, 2020.  *Id.*  Plaintiff argues that, because the deposition transcripts were available before the affirmative expert deadline of October 14, Mr. Roller could have considered the transcripts in his first report, making untimely any supplement based on this previously available information.  Docket No. 80 at 7.  As support, plaintiff highlights that his expert, Mr. DeFoe, discussed the deposition testimony in his October 14, 2020 report.  *Id.*  The Court agrees with plaintiff and finds that Mr. Roller's opinions based on the previously available deposition transcripts are

18

untimely and contradict the purpose of supplementation contemplated by Rule 26(e). *See, e.g.*, *S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2008 WL 4587240, at *3 n.3 (D. Colo. Oct. 15, 2008) (citing *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (Rule 26(e)(1) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report"); *Akeva, LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) ("Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading.  It does not cover failures of omission because the expert did an inadequate or incomplete preparation.  To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation." (citations omitted)).

Defendants argue that, even if Mr. Roller's supplementation is untimely, it should not be excluded because the delay is substantially justified and harmless under Rule 26(a) and Rule 37(c)(1).  Docket No. 96 at 10 (citing *Woodworker's Supply*, 170 F.3d at 993, and *Spring Creek*, 2016 WL 1597529, at *4).  Defendants have provided no justification – let alone a substantial justification – for why Mr. Roller was unable to include in his original report his opinions on the deposition transcripts that he reviewed. Plaintiff, however, does not argue that defendants have engaged in bad faith. Considering the *Woodworker's Supply* factors mentioned above, which the Court must, *see HCG Platinum, LLC v. Preferred Product Placement Corp.*, 873 F.3d 1201 (10th Cir. 2017) (holding that the district court erred when it "overlooked the lion's share of the *Woodworker's* inquiry"), the Court finds that, although plaintiff has had access to the

19

transcripts since at least when Mr. DeFoe's report was issued, plaintiff would be prejudiced by defendants being permitted to bolster Mr. Roller's initial opinions without the same opportunity for plaintiff. *Nacchio*, 2008 WL 4587240, at *3 n.3 (citing *Akeva*, 212 F.R.D. at 310). The Court finds that the violation of Rule 26, therefore, was not harmless. Because defendants did not comply with their obligations under Rule 26, and their noncompliance was neither substantially justified nor harmless, *see Jacobsen*, 287 F.3d at 952–53; *Cook*, 233 F.R.D. at 600 (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)), the Court will exclude Mr. Roller from rendering any opinion based on the deposition transcripts.

Additionally, plaintiff argues that, because Mr. Roller did not differentiate which portions of his second report supplement his first report and which portions rebut Mr. DeFoe's report, the entire report must be stricken. Docket No. 80 at 8–9. Plaintiff claims that, "[d]efendants should not be permitted to benefit from their expert's submission of a confusing report that does not identify what portions are supplemental and what portions are rebuttal. The only solution is to strike the report." *Id.* at 9. In response, defendants assert that Mr. Roller has provided his rebuttal opinions at the beginning of his second report, Docket No. 96 at 9 (citing Docket No. 96-5 at 1–8), and that his supplemental opinions are found at the end of his report. *Id.* (citing Docket No. 96-5 at 9–17).[5] Defendants, however, appear to be mistaken. Pages 9 through 17 of Mr. Roller's second report contain no analysis or opinions. Moreover, the beginning of

---

[5] Plaintiff provided Mr. Roller's first and second reports as exhibits to plaintiff's motion. *See* Docket Nos. 80-2 and 80-4, respectively. Defendants provided the two reports as exhibits to their response. *See* Docket Nos. 96-2 and 96-5, respectively.

Mr. Roller's report, which defendants claim is only rebuttal material, contain opinions clearly based on deposition transcripts.  *See, e.g.*, Docket No. 80-4 at 4 ("Once again it was the intent of the Sergeant and Agents on scene to first locate Mr. Ericksons [sic], who was thought to have been in the attic area.  This stated fact was constant throughout all the testimony during each separate deposition.").  Mr. Roller's second report is not a model of clarity or specificity; however, striking an expert's report or precluding an expert from testifying is the exception rather than the rule.  Fed. R. Evid. 702 advisory committee note.  The Court will deny plaintiff's request.

Finally, plaintiff seeks to exclude Mr. Roller's second report because defendants did not seek leave to file a supplemental report after the deadline for affirmative expert disclosures had passed.  Docket No. 80 at 9.  Defendants do not address this argument.  Plaintiff is correct that the deadline for affirmative experts had passed when Mr. Roller had filed his second report.  However, under the Local Rules, disclosures under Rule 26(a)(3) of the Federal Rules of Civil Procedure must be made by the deadline for the submission of the Final Pretrial Order, not necessarily the deadline for the designation of affirmative experts.  D.C.COLO.LCivR 26.1(b); *see also Carroll v. SAFECO Ins. Co. of Am.*, No. 20-cv-00219-REB-NYW, 2020 WL 7664731, at *2 (D. Colo. Dec. 24, 2020); *Auraria Student Housing at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-cv-02516-WJM-KLM, 2015 WL 72360, *3 (D. Colo. Jan. 5, 2015); *Buben v. City of Lone Tree*, No. 08-cv-00127-WYD-MEH, 2010 WL 4810632, *2 (D. Colo. Nov. 19, 2010).  Here, the parties' proposed final pretrial order was originally due October 14, 2020, *see* Docket No. 22 at 15; however, the deadline was extended to January 21, 2021.  Docket No. 85.  Thus, at least under the Local Rules, Mr. Roller's

supplemental report was not untimely.

Even if made on or before the deadline, however, a court will also consider a party's diligence in obtaining the supplemental information, the length of time to supplement once the party obtained the supplemental information, and other relevant facts to determine whether a party's course of conduct in supplementing frustrates the purpose of Rule 26 to promote full and orderly pretrial disclosure.  *See, e.g.*, *Carroll*, 2020 WL 7664731, at *2; *Jama v. City & Cnty. of Denver*, 304 F.R.D. 289, 299-300 (D. Colo. 2014) (discussing timeliness under Rule 26(e)); *Harvey v. United States*, No. 04-cv-00188-WYD-CBS, 2005 WL 3164236, *13 (D. Colo. Nov. 28, 2005).  While a party's "obligation to supplement under Rule 26(e)(1)(A) continues after discovery closes and does not require a court order," *Carroll*, 2020 WL 7664731, at *3 (quoting *Benjamin v. Bd. of Trustees of Barton Cnty. Cmty. Coll.*, 2020 WL 4785107, at *2 (D. Kan. Aug. 18, 2020)), the court must still consider defendants' diligence in obtaining the deposition testimony and the time it took for defendants and Mr. Roller to supplement thereafter.  *Id.* (citing *Jama*, 304 F.R.D. at 299–300).  Defendants do not explain why Mr. Roller was "recently given" the deposition transcripts, as he says.  *See* Docket No. 80-4 at 1.  Defendants merely "contend" that "supplementation was [not] delayed." Docket No. 96 at 10.  This is not sufficient.  Moreover, as the Court has already explained, in balancing the *Woodworker's Supply* factors, Mr. Roller's submission of an untimely supplemental report was not harmless, and it would not be appropriate for plaintiff to have to re-depose Mr. Roller.  The Court therefore rejects defendants' timeliness explanations and will exclude Mr. Roller from testifying about any information contained in the deposition transcripts, which he should have had access to when he

submitted his first report.

### 4. Basis of Mr. Roller's Opinions

Plaintiff finally argues that Mr. Roller's testimony is inadmissible because it is based on speculation about what may have occurred during the use of force incident. Docket No. 80 at 9.  Plaintiff contends that, first, Mr. Roller speculated about what certain facts mean without having expertise to support his assumptions and, second, speculated by creating facts to "plug holes" in defendants' case.  *Id.* at 10.  An expert may base his opinions on factual assumptions, and the "full burden of exploration of the facts and assumptions underlying the testimony of an expert witness falls squarely on the shoulders of opposing counsel's cross-examination."  *Smith v. Ford Motor Co.*, 626 F.2d 784, 799 (10th Cir. 1980) (citation omitted).  However, such assumptions must be supported by the evidence.  *See Gianfrancisco v. Excelsior Youth Ctrs., Inc.*, No. 10-cv-00991-PAB-KMT, 2012 WL 2890916, at *4 (D. Colo. July 16, 2012); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

As to his first argument, plaintiff identifies Mr. Roller's description of the significance of the two "no bail" or "no bond" warrants that were set for plaintiff.  *See* Docket No. 80-4 at 4 ("Two 'no bail' warrants cannot be understated.  They are considered serious. . . .  No bail warrants or bonds simply means [sic] that the Judge issuing had such a concern for the suspect that he enhanced the seriousness of the offense. This could be for the crime issued as well as a noted flight risk.").  Plaintiff contends that, not only is this an inaccurate description of what "no bail" or "no bond"

23

warrants mean, Mr. Roller's assumption is pure speculation. The Court agrees with plaintiff. There is no indication that Mr. Roller has any expertise regarding Colorado criminal law or the significance of "no bail" or "no bond" warrants in this state. The Court will therefore exclude this opinion. *See Gianfrancisco*, 2012 WL 2890916, at *4 (citing *Fanning v. Sitton Motor Lines, Inc.*, 2010 WL 4261476, at *7 (D. Kan. March 10, 2010) ("to satisfy the strictures of *Daubert*, an expert may not base his or her testimony upon assumptions that are not supported by the evidence")).[6]

Plaintiff's second argument is that Mr. Roller's testimony attempts to "plug holes" in defendants' case with speculative opinions and also improperly opine on plaintiff's credibility. Docket No. 80 at 11–12. The purpose of an expert witness is to assist the trier of fact, *Kumho Tire*, 526 U.S. at 156; *Rodriguez-Felix*, 450 F.3d at 1122–23, but a witness cannot do so if his opinions are based on "subjective belief or unsupported speculation." *Mitchell*, 165 F.3d at 780. The Court also must not allow an expert to testify on matters if his or her testimony would "usurp[] a critical function of the jury." *See United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993). Resolving conflicts in the evidence and reaching ultimate conclusions of fact are both functions exclusively reserved to the trier of fact. *United States v. Leach*, 749 F.2d 592, 600 (10th Cir. 1984). Additionally, it is "the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981) (citation

---

[6] Plaintiff identifies additional opinions that he believes are speculative, including those concerning the conversion between "alcohol serum level" and "blood alcohol level" and the definition of "dabs" of marijuana, Docket No. 80-2 at 1, but makes no argument about whether he believes these opinions are speculative or unsupported by the evidence, and the Court does not find them to be, given Mr. Roller's expertise.

omitted); *see also United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999).

Accordingly, the Court will exclude any testimony in which Mr. Roller "apprais[es]

credibility, determin[es] the weight to be given to the testimony, draw[s] inferences from

the facts established, resolv[es] conflicts in the evidence, [or] reach[es] ultimate

conclusions of fact." *Prager v. Campbell Cnty. Meml Hosp.*, 731 F.3d 1046, 1063 (10th

Cir. 2013) (quoting *United Int'l. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207,

1227 (10th Cir. 2000)).  The Court considers the opinions that plaintiff identifies in turn.

The Court will exclude Mr. Roller's opinions regarding whether the injuries to

plaintiff's neck were self-inflicted, *see* Docket No. 80-2 at 3, because there is no

indication that Mr. Roller has any expertise in neck wounds or self-inflicted versus

canine-inflicted injuries.  *See Gianfrancisco*, 2012 WL 2890916, at *4–6; *Mitchell*, 165

F.3d at 780 (admissible expert testimony must based on "actual knowledge and not

subjective belief or unsupported speculation," and an expert's inferences must be

"supported by appropriate validation – i.e. 'good grounds,' based on what is known"

(citation omitted)).  For the same reason, the Court will exclude Mr. Roller's opinions

about Finn's disposition, how suited Finn is to being a police dog, and whether

defendant O'Hayre could control Finn.  *See* Docket No. 80-1 at 6; Docket No. 80-2 at 3.

In his initial report, Mr. Roller mentions two "incidents" involving Finn, which Mr. Roller

explains as either Finn "doing his job" or Finn acting "completely understandab[ly] given

the bizarre circumstances."  Docket No. 80-2 at 4–5.  Defendants do not specify what

Mr. Roller was designated as an expert on, *see* Docket Nos 80-2, 80-3; however, even

assuming that Mr. Roller is an expert on police canines generally, there is no indication

that Mr. Roller has any knowledge or expertise regarding Finn's disposition.  *See*

*Mitchell*, 165 F.3d at 780; *Joiner*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Plaintiff also asks the Court to exclude additional opinions of Mr. Roller that are based on subjective belief or unsupported speculation. *See* Docket No. 80 at 18. Plaintiff highlights the following statements. *See* Docket No. 80-2 at 6 ("It can be surmised that this was indeed [plaintiff's] cell phone and that he did have access to said phone."); *id.* at 8 ("Some suspects are lying in prone positions and or secreted tightly in positions where arms and legs are not afforded.  This case was one of those circumstances.  Without Agents seeing the initial contact[,] it can be surmised that K9 Finn met the suspect who was lying on the floor between bed and closet area.  His arms might have been held tightly at his sides to avoid contact.  This fact is simply unknown."); Docket No. 80-4 at 3 ("there is just as much assumption [sic] that [plaintiff] was trying to escape and flee the residence"); *id.* ("if [plaintiff] was of the mindset of killing himself the possibility of self-inflicted injuries to his neck cannot be discounted"); *id.* at 6 ("What is unknown to all is what happened before K9 Finn made his way into the bedroom.  Did [plaintiff] self-inflict wounds to his neck or did K9 Finn bite his neck[?]"); *id.* at 6 ("The fact that a grunt was heard is believable, but what caused the grunt[?] Was the grunt caused by [plaintiff's] attempt to push and barricade himself by shoving the dresser against the door?  Considering the size and weight of the dresser . . . .  I find this very plausible."); *id.* at 8 ("If he had completed his barricade appropriately this would have caused K9 Finn to pinpoint scent source and give a positive bark alert at the door.  There is no doubt that Agent O'Hayre would have offered [plaintiff] additional

26

chances to surrender.  These were all possibilities that could have occurred if [plaintiff] had exercised any of these options given to him by Agents.")).  The Court agrees that these statements are unsupported speculation.  *See Gianfrancisco*, 2012 WL 2890916, at *4; *Mitchell*, 165 F.3d at 780.

The Court will also exclude Mr. Roller's statements that plaintiff "failed to take advantage of the [] opportunities" to be taken into custody "without incident," that "[t]he facts dictate that [plaintiff] was awake and attempting to hide or flee, that plaintiff "made the decision to try and barricade himself inside his room.  I believe this argument holds a tremendous amount of weight considering his effort to physically move the dresser to block the door."  Docket No. 80-4 at 8.  While these opinions are not necessarily outside of Mr. Roller's expertise or based on unsupported speculation, the Court does not find these statements relevant to the issue of what defendants knew at the time of the incident and whether, in light of what defendants knew, they acted reasonably or were properly trained.  *See United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (noting that Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" (quoting *Daubert*, 509 U.S. at 589)).

Finally, if Mr. Roller has foundation at trial for such an opinion, the Court will permit him to testify about what facts, in his opinion and based on his expertise, led him to conclude that plaintiff was "setting himself up in a fortified position and or [sic] trying to escape" or was actively resisting the officers' orders.  Docket No. 80-2 at 6.  The Court will also permit Mr. Roller to opine on the facts that led him to conclude that plaintiff's statements about his movements are "incredibly challenging to believe," that

"[a]ny suggestion that Mr. Erickson was sleeping during this incident just does not hold weight," that it is "too far a reach" to conclude that "it was now time to fall asleep as the police knowingly were responding," and that it was an "impossible task" to de-escalate the situation.  Docket No. 80-4 at 2–4.

Moreover, Mr. Roller may testify why, in his opinion, if there were no dresser drawer against the door, "this would have allowed [defendant] O'Hayre to enter much quicker" and why he believes plaintiff engaged in "passive and arguable resistance that was the causal factor to his injury."  *Id.* at 6.  Plaintiff has not shown that these opinions are speculative or would "usurp the function of the jury in deciding the facts."  *See Dazey*, 403 F.3d at 1171; *see also United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) (noting that Federal Rule of Evidence 704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact).

### B.  Defendants' Motion to Exclude Scott DeFoe

Plaintiff endorsed Mr. DeFoe as a retained expert to opine on "[p]olice practices, police training, police use of K-9, police use of SWAT, police supervision, [and] police use of force."  Docket No. 95-1 at 2.  Mr. DeFoe's law enforcement career includes various positions with the Los Angeles Police Department from approximately November 1989 until March 2016 as well as serving as a Deputy Sheriff for the Riverside County, California Sheriff's Department between June 2013 and June 2014. Docket No. 95-2 at 2–5.

Defendants move to exclude Mr. DeFoe from testifying for two main reasons. First, defendants argue that Mr. DeFoe relies on the "undefined and nebulous standard"

28

of "standard police practices," which is a "self-created legal principle" and leads to an improper legal opinion.  Docket No. 82 at 5–8.  Second, defendants argue that Mr. DeFoe's opinions are neither relevant to the issues in this matter nor the product of a reliable methodology.  *Id.* at 8–12.  Because defendant's argument that Mr. DeFoe has relied on an "undefined and nebulous standard" is really an argument about the reliability of his opinions, the Court considers this argument in the context of relevance and reliability.

As the Court noted above, the Supreme Court has held that, because police enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and time to time," such practices cannot establish a Fourth Amendment violation, as the Constitution is not "so variable" and cannot "be turned upon trivialities." *Whren*, 517 U.S. at 815.  Following *Whren*, the Tenth Circuit has held that the violation of police department operating procedures "will not turn an otherwise constitutional use of force into a constitutional violation."  *United States v. Rodella*, 2014 WL 6634310, at *15 (D.N.M. Nov. 19, 2014); *see also Tanberg*, 401 F.3d at 1167 ("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right *ex nihilo*."); *Medina v. Cram*, 252 F.3d1124, 1133 (10th Cir. 2001) (excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices," because "claims based on violations of state law and police procedure are not actionable under § 1983").

The law on the admissibility of "standard police practices" or "nationally accepted police practices" in the Tenth Circuit is less clear.  *See Rodella*, 2014 WL 6634310, at *18–20.  In *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 742–43 (10th Cir. 1993), the

court held that the district court did not err in allowing an expert witness to testify that the Denver Police Department's standards fell below "generally accepted police custom and practices." The court relied on *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), which provides the bounds by which an expert witness who is an attorney may testify to legal issues. Applying *Specht*, the court in *Zuchel* held that the district court appropriately limited the attorney expert witness and that the expert's testimony on "accepted police practices" did not violate *Specht*. *Zuchel*, 997 F.3d at 743.

The Tenth Circuit considered the issue of the admissibility of standard police practices more recently in *Marquez*. 399 F.3d at 1221. In that case, the court affirmed the district court's exclusion of an expert who would have opined on nationally accepted police practices. *Id.* at 1222. The district court held that the testimony "regarding law enforcement standards was both irrelevant and confusing on the ground that the violation of such standards is not *ipso facto* a Fourth Amendment violation." *Id.* The court explained, "the only issue before the jury was whether [defendant] acted as a 'reasonable officer' when he ordered his police dog to apprehend [plaintiff]." *Id.* The court concluded that "issues of . . . whether [defendant] violated some 'well established police procedure' are only tangentially related" because even if the jury found the defendant "violated police procedure, the jury could nonetheless find he acted reasonably." *Id.* The Tenth Circuit relied on *Marquez* in *Tanberg*, which, as mentioned above, held that police department standard operating procedures are inadmissible in cases about the reasonableness of officers' conduct under the Fourth Amendment. *See* 401 F.3d at 1165.

### 1. Reliability

Defendants argue that all of Mr. DeFoe's opinions that reference "standard police practices" should be excluded because Mr. DeFoe does not define the standards in his opinions and no such standards exist.  Docket No. 82 at 10–11.  The Court agrees with defendants.  First, while Mr. DeFoe served in various positions with the Los Angeles Police Department, *see* Docket No. 95-2 (DeFoe's CV), there is no indication in Mr. DeFoe's materials or in plaintiff's disclosures that Mr. DeFoe has any experience outside of Southern California to opine on national police standards or standard police practices, much less sufficient experience to be qualified as an expert on the subject. Mr. DeFoe's single experience outside of Southern California was his first job after leaving the Army as a Special Agent with the United States Department of Treasury from 1988 to 1989.  *Id.* at 5.  The Court does not find this adequate nationwide experience to opine on standard police practices, and there is no indication in Mr. DeFoe's credentials that he has any training in standard or national police practices. *See Rodella*, 2014 WL 6634310, at *21 (excluding testimony of witness law enforcement officer whose 15-year career was limited to a single state).  Nevertheless, because defendants did not challenge Mr. DeFoe's qualifications, the Court does not find this issue dispositive.

Second, Mr. DeFoe does not explain or identify what the standard police practices that he relies upon are, whether they are written in a manual or book, or how the practices that he relies upon (and not other practices) became the standard by which the Court should determine the reasonableness of defendants' actions.  Mr. DeFoe states that his "opinions involve the consistency of the officers' actions with standard police practices."  Docket No. 82-1 at 9.  He also states that he bases his

opinions on his "twenty-eight-year law enforcement career," *id.* at 9, 13, 18, 22, 27, and, while he mentions "standard police practices," *see id.* at 9, 13, 22, he does not explains what these practices entail, where they are from, or how or when they are applied.

While a witness may acquire expertise on a subject based on experience in that field, *Medina-Copete*, 757 F.3d at 1104, and "police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters." *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009), the witness must still connect the experience and the opinions.  To the extent Mr. DeFoe relies solely on his experience, he has not explained "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *See Medina-Copete*, 757 F.3d at 1104. Because there is no indication what methodology Mr. DeFoe used in deriving these standards, the Court is not able to determine whether the methodology is reliable.  *See* Fed. R. Evid. 702 (the court must determine whether the testimony is "the product of reliable principles and methods" and whether "the witness has applied the principles and methods reliably to the facts of the case"); *see also Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1120 (10th Cir. 2004); *Joiner*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit . . evidence that is connected . . . only by the *ipse dixit* of the expert").  This determination is sufficient to warrant the exclusion of all of Mr. DeFoe's opinions based on standard police practices.

### 2. Relevance

Defendants argue that Mr. DeFoe's testimony is not relevant to the issue of whether it was reasonable to deploy Finn.  Docket No. 82 at 11–13.  The Court agrees

with defendants.  As mentioned previously, decisions from the Tenth Circuit have found

no abuse of discretion where the district court admitted expert testimony on standard

police practices, *see, e.g.*, *Zuchel*, 997 F.2d at 742–43, and where the district court

excluded such testimony.  *See, e.g.*, *Marquez*, 399 F.3d at 1222.

The Court will follow *Marquez*.  Not only is it more recent precedent, decided

after *Daubert* and *Kumho Tire*, unlike *Zuchel*, but, more important, it applies a more

appropriate standard for considering whether expert testimony is admissible.  *Zuchel*, as

mentioned above, applied *Specht*, which, while still good law, addresses the issues that

arise when attorneys testify as expert witnesses, including the extent to which attorney

expert witnesses should be able to express opinions on legal issues.  *See Specht*, 853

F.2d at 809–10 (holding that "a witness may refer to the law in expressing an opinion

without that reference rendering the testimony inadmissible" and that "an expert's

testimony is proper under Rule 702 if the expert does not attempt to define the legal

parameters within which the jury must exercise its fact-finding function.").  *Marquez*, on

the other hand, specifically addressed the relevance of police practices to the issue of

whether a defendant officer used reasonable force.  *See* 399 F.3d at 1221–22.

Following *Marquez*, the Court finds that Mr. DeFoe's opinions on standard police

practices and whether defendants' complied with those practices irrelevant and

inadmissible.  As in *Marquez*, the issues of whether defendants "used the minimum

amount of force to apprehend" plaintiff or "violated some 'well established police

procedure' are only tangentially related" because even if the Court found that

defendants "used more then [sic] the minimum amount of force necessary and violated

police procedure, the jury could nonetheless find he acted reasonably."  *Marquez*, 399

33

F.3d at 1222.  The Court also finds that, if Mr. DeFoe testified about nationally accepted police standards, the jury might erroneously believe that a violation of these nationally accepted police standards is also a violation of the Constitution.  *See Tanberg*, 401 F.3d at 1165; *Marquez*, 399 F.3d at 1222.

While expert testimony on police procedures may be relevant to claims of municipal liability in order to determine whether the municipality failed to train its officers with respect to the use of force, *see Zuchel*, 997 F.2d at 742; *see also Russo*, 953 F.2d at 1047, such testimony is irrelevant to use of excessive force claims.  *See, e.g.*, *L'Esperance v. Mings*, 2003 WL 25692557, at *3 (D.N.M. July 14, 2003) ("This is not a negligence case involving an issue such as medical malpractice, where expert testimony is almost always necessary to define the standard of care applicable to the alleged tortfeasor.  Rather, the standard for determining whether [defendant's] use of force was unreasonable or excessive is defined by the interpretation of the Fourth Amendment provided by the Supreme Court and the Tenth Circuit.").  Plaintiff's third amended complaint states claims of (1) excessive force, (2) excessive force conspiracy, (3) and municipal liability failure to train.  *See* Docket No. 106 at 23–28, ¶¶ 141–174.  Thus, to the extent testimony on police practices is admissible at all in this case, it would only be relevant to plaintiff's municipal liability claim.[7]  National police standards,

---

[7] The court in *Rodella* noted that, while some courts have applied *Zuchel* in use of excessive force claims, *see, e.g.*, *Ortega v. City & Cnty. of Denver*, No. 11-cv-02394-WJM-CBS, 2013 WL 438579 (D. Colo. Feb. 5, 2013), the court did not mention *Marquez* or *Tanberg*.  *Rodella*, 2014 WL 6634310, at *25.  The court in *Davies v. City of Lakewood*, No. 14-cv-01285-RBJ, 2016 WL 614434 (D. Colo. Feb. 16, 2016), followed both *Zuchel*, for the rule on an expert's testimony about legal issues, and *Tanberg* for the rule that opinions about whether individual officers' actions were consistent with Lakewood Police Department policies were not admissible.

however, would not be relevant to plaintiff's *Monell* claim about the Lakewood Police Department.

The Court will therefore exclude Mr. DeFoe from rendering any opinion at trial based on standard or nationwide police procedures.  The Court will not preclude Mr. DeFoe from offering Opinion Number 4, which is that defendant O'Hayre "should have determined . . . that the deployment of [Finn] to search and ultimately apprehend (contact/bite) [plaintiff] did not meet the K9 deployment criteria set forth in Lakewood Police Department Policy," Docket No. 82-1 at 23, in the context of plaintiff's failure-to-train claim.  *See Russo*, 953 F.2d at 1047.[8]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Motion to Strike Defendants' Retained Expert Doug Roller [Docket No. 80] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's expert, Doug Roller, shall provide to plaintiff the facts or data that he considered in forming his opinions **on or before October 18, 2021**.  It is further

---

[8] Because the Court has found that none of Mr. DeFoe's opinions that rely on standard police practices is admissible, the Court declines to reach defendants' additional arguments concerning Mr. DeFoe's opinions about the officers' search methodology or what would have been appropriate if plaintiff were in the attic.  *See* Docket No. 82 at 11–13.

**ORDERED** that Defendants' Rule 702 Motion to Exclude Plaintiff's Expert

Witness Scott A. DeFoe [Docket No. 82] is **GRANTED in part** and **DENIED** in part.


DATED September 27, 2021.


BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge